D'Ivernois *v.* Leavitt.

D'IVERNOIS and DORLER *vs.* D. & R. LEAVITT.

The rights relating to the acquisition, enjoyment and disposition of real property are prescribed and regulated, exclusively, by the laws of the country in which the property is situated.

Every community, independent and sovereign, possesses this power, as an inherent and essential element of its sovereignty.  And no other community can interfere with the method by which real property may be acquired or lost, the

tenure by which it may be held, the duration or quantity of interest in it, or the conditions to which the enjoyment of it is subject.

Yet an instrument purporting to dispose of real estate situated in another state or country may be within the reach of the laws of the state in which it is executed, and may be assailed on the ground that such instrument was in fraud of the citizens of that state, or that it was obtained from the grantor fraudulently.

Therefore, an assignment, executed by debtors residing in this state, for the benefit of their creditors, although it relates to, and embraces, real and personal property in other states, may, if our law deems it fraudulent, be declared void, by the courts of this state.

An assignment which authorizes the trustee to sell the assigned property *upon credit*, is fraudulent and void, as against the creditors of the assignors.

An assignment will also be rendered void by a provision which allows the assignee to withhold the division and distribution of the assets for any length of time which he, in his discretion, may think proper.

A judgment, confessed in favor of a creditor to whom the debtor has previously assigned his property in trust for the benefit of creditors, the assignee being among the number, and who still claims under the assignment and seeks to enforce it, is fraudulent and void. If the creditor would enforce the judgment he must abandon the assignment. ROOSEVELT, J., dissented.

Where a sale of personal property is made, and the property is delivered, in another state, and a bill of sale and inventory are also made out, and delivered, there, the validity of the transaction, both as to the sale itself, and the extrinsic acts, simultaneous with or subsequent to it, must be determined by the laws of that state. The courts of this state have no jurisdiction.

IN EQUITY. This was an appeal by the plaintiffs from a judgment or decree in equity, entered at a special term. On the 29th of March, 1845, the mercantile firm of J. W. & R. Leavitt, in the city of New York, suspended payment and became insolvent, being indebted to the defendant David Leavitt, for money lent and advanced by him to said firm, $70,948.16. A portion of this indebtedness was secured by mortgage, executed by John W. Leavitt. Before their failure, David Leavitt had incurred liabilities, on their behalf, to aid them in their business, which liabilities existing at the time of the execution of the assignments hereinafter mentioned, amounted in the aggregate to the sum of $106,124.29, and were all paid by him. This firm at different times, before their failure, hypothecated to David Leavitt, as security for his loans and advances, certain debts, claims and property which are mentioned in schedule

C ; and on the 29th of March, 1845, they hypothecated to him, as further security for such loans and advances, the surplus of all securities belonging to them, lodged with the American Exchange Bank, after the payment of their indebtedness to said bank.   On the 29th day of March, 1845, the said John W. Leavitt and Rufus Leavitt and Frederick T. Mygatt, by deed of assignment of that date, assigned to David Leavitt and Joseph C. Vandervoort, upon certain trusts, for the benefit of creditors, all their joint and several property and estate, within the state of Louisiana, and all merchandise, moneys, credits and effects, belonging to them, or either of them, in the possession of any firm or party in New Orleans.   On the first day of April, 1845, the said John W. & Rufus Leavitt executed to the said David Leavitt and Joseph C. Vandervoort, six other deeds of assignment, upon certain trusts, for the benefit of their creditors, by which the assignors conveyed all their lands and real estate, situated in the states of Alabama, Michigan, Kentucky, Indiana, Tennessee and Illinois.   On the same day, the same parties executed to the said D. Leavitt and Joseph C. Vandervoort another assignment of book accounts, debts, &c. for the benefit of their creditors.   On the 2d day of April, 1845, the same parties executed to the said David Leavitt another assignment of certain specified claims, for the benefit of their creditors. On the 5th day of April 1845, they executed to the said David Leavitt and Joseph C. Vandervoort another assignment of hypothecated notes, for a similar purpose.   On the 25th day of April, 1845, they executed to said David Leavitt an assignment of real estate, in the city of New York, for a similar purpose. The leasehold premises on Barclay street, embraced in this assignment, were subject to a mortgage executed by John W. Leavitt to David Leavitt, on the 19th of October, 1842, to secure the payment of $20,000, the lien of which mortgage was preserved in and by said assignment.   On the 26th of June, 1845, John W. Leavitt was, and for several years previously had been, a resident of Weehawken, in the state of New Jersey, and was the owner and in possession, at that place, of certain personal property.   On that day he sold said property to David

D'Ivernois *v.* Leavitt.

Leavitt, at a valuation, who credited the firm with the amount at which the property was appraised. This property remained at Weehawken, in the possession of John W. Leavitt, upon hire, until May 1, 1847, when he removed to the city of New York, and the property, with the farm, was rented to R. Cochran, who afterwards bought it. On the 31st day of July, 1845, J. W. & R. Leavitt executed to said David Leavitt another assignment of all the real and personal property and estate belonging to them, or either of them, for a similar purpose. It was declared in this assignment, that its execution or acceptance should not in any way impair the lien of the said David Leavitt upon any securities which he then held. On the 26th of July, 1845, in the absence of D. Leavitt from this state, a judgment was entered in the supreme court, in his favor against John W. & Rufus Leavitt, upon a bond and warrant of attorney, for fifty thousand dollars of debt; an execution was issued and returned, and on the 31st July, 1845, a creditor's bill was filed against them; subsequently, a receiver was appointed of their property and effects, and they executed and delivered to him an assignment thereof. On the 26th of January, 1848, the plaintiffs, who were judgment creditors of John W. Leavitt & Rufus Leavitt, filed their bill in this suit, against the latter, and a subpœna and injunction issued thereon, were served upon them. On the 10th of October, 1850, an amended bill was filed by said plaintiffs, to set aside said assignments, sale and judgment; David Leavitt was joined as a party defendant, and the subpœna therein was served upon him on the 11th day of the same month. This bill called for an answer from all the defendants, upon oath. The defendants answered the bill, and a replication was filed to each answer. For a fuller statement of the facts, see *Nicholson* v. *Leavitt*, (4 *Sand. S. C. Rep.* 276.)

The cause was heard upon pleadings and proofs before Mr. Justice Roosevelt, and a decree made therein, which adjudged: (1.) That the assignments K and L were fraudulent and void as against the plaintiffs. (2.) That the other assignments were not fraudulent and void. (3.) That the hypothecation of the securities mentioned in schedules C and D, and the prior liens

D'Ivernois *v.* Leavitt.

of David Leavitt upon the securities embraced in the assignments K and L, were unimpaired by the acceptance of said assignments. (4.) That the creditor's bill filed by David Leavitt, and the proceedings thereunder, were not fraudulent as against the plaintiffs. (5.) That the plaintiffs were not entitled to any relief in this action against David Leavitt in respect of the household furniture in New Jersey. The plaintiffs appealed from the whole of said judgment.

*C. O'Conor,* for the appellants. I. The nine assignments annexed to the bill, and respectively marked A, B, C, D, E, F, G, K and L, contain the clause authorizing a sale of the assigned property on credit, and are therefore void as against the plaintiffs. (*Nicholson* v. *Leavitt,* 2 *Selden,* 510.) The court below set aside K and L, but refused to set aside the others.

II. The real estate assigned by the seven assignments, A to G inclusive, was copartnership property. It was taken in payment of partnership debts, was received for goods sold by the partnership, or was bought with partnership funds. This is proven by, 1st. The deposition of R. Leavitt. 2d. The deposition of J. W. Leavitt. 3d. The assignments themselves. In equity it is to be treated as personal property and administered as such. (*Collyer on Partnership,* § 135 *and note* 3. *Story on Part. pp.* 127, 128. 3 *Kent,* 38, 39. *Delmonico* v. *Guillaume,* 2 *Sand. Ch. R.* 366. *Bogert* v. *Hertell,* 4 *Hill,* 492. *Stagg* v. *Jackson,* 1 *Comstock,* 206. *Craig* v. *Leslie,* 3 *Wheat.* 577.) It has all the qualities of personality belonging to a partnership. No partner can be said to own any undivided portion of it; his interest must depend on the result of the final account. No individual creditor can claim payment out of the real estate, or any part of it, until the partnership creditors are paid, and then only out of such share as, on the accounting, shall be found to be the interest of his debtor. These assignments cannot be subject to a different rule from that which governs assignments of other partnership property. They are as much to be governed by the law of this state as the general assignment L, which covers all the *real* and personal property

of the assignors wherever situated, and which, by the decree, is set aside. No decided case sanctions the distinction made by the decree in favor of these assignments.

III. The assignment A was distinguished from K and L, and was declared valid as against creditors although equally with those assignments within the letter and the spirit of the decision in *Nicholson* v. *Leavitt.* The ground assumed was, that Frederick T. Mygatt was one of the assignors. An examination of the assignment will show that the property assigned is not only of the joint property, but the property of *each, and any* of the assignors, and of course includes *the property, and the interest in property, of J. W. & R. Leavitt.* Upon no principle, can a creditor be deprived of his recourse upon the property of his debtor, because that debtor sees fit to join a third person in his void assignment. The plaintiffs seek to charge the property and the interest in property of J. W. & R. Leavitt, and so far as the assignment A assigns such property and interest in property, it should be set aside. As appears by the assignment itself, Mygatt had no real interest in the property assigned. It is made solely to pay the creditors of J. W. & R. Leavitt, and the surplus is to be reserved to them alone.

IV. Three of the assignments not mentioned in the first point (those marked H, I and J,) contain a clause equally objectionable with the credit clause, i. e. that which directs the assignees, after paying the preferred debts, to distribute the funds *realized* from the assigned estate among the general creditors, "*at such reasonable time or times as they in their discretion might think proper.*" These assignments should have been set aside. (1.) The assignees are directed "to collect and get in" *all the assigned estate,* in the first instance. And out of the moneys "so collected, received and gotten in," to pay, *without qualification,* the expenses of the trust and the preferred debts, most of the latter being those due to the assignee David Leavitt, or for which he was liable. Then follows the trust for the general creditors, under which they were to be paid at a time to be selected in the *discretion of the assignees,* although the money to be distributed was *already* in hand.

D'Ivernois v. Leavitt.

(2.) The principle upon which *Nicholson* v. *Leavitt* was decided was, that although a debtor might make an assignment devolving the duty upon his assignee of distributing his property among his creditors, he should not, without the assent of the creditors, avoid his obligation of immediate payment, nor extend the period of credit. In other words, that the debtor should not clothe his assignee with a power to say when the creditors should receive their dividends. (*Opinion of Gardiner, J.*) (3.) By these assignments the assignees are expressly authorized to pay the general creditors "at such reasonable times as they *in their discretion* may think proper." The distribution being directed to be made after all the funds were collected, it should then be immediate. (4.) This discretionary power to defer payment is vested in the assignees only as against the general creditors. David Leavitt, and the other preferred creditors, take their money at once. (5.) No clause could be more effectual in the hands of a subservient assignee, to coerce the creditors to a compromise. Vesting such a power could only have been suggested by a desire to *subject* the interests of the general creditors to the arbitrary will of the assignor by whom the assignees were chosen. (6.) If a debtor in failing circumstances shall be permitted to select his own favorite instrument for assignee, and clothe him with so formidable a power of coercion, the spirit and principle of the statute, and many solemn judgments under it, will be departed from. (*Grover* v. *Wakeman*, 11 *Wend.* 187.)

V. The sale of the personal property at Weehawken was fraudulent. (1.) The consideration was a credit in account. (2.) The delivery was a sham, though made with great formality. The buyer was not present, and evidently neither took nor felt any interest in the transaction. (3.) The seller continued in uninterrupted possession of the whole property for two years, and a part of it (down, at least, to the time of his examination, in July, 1849,) four years after the sale. The sale was fraudulent by the statute and at the common law. The former is only declaratory of the latter. (2 *R. S.* 136, § 5. *Sturtevant* v. *Ballard*, 9 *John.* 337. *Divver* v. *McLaughlin*,

2 *Wend.* 596. 2 *Kent*, 526–8. *Towner* v. *Church*, 2 *Abbott's Rep.* 299.)

VI. The $50,000 confessed judgment, and also the execution and bill thereon, were merely auxiliary to the assignments. Their only office, end or aim, was to effectuate the assignments. (*Mackie* v. *Cairns*, 5 *Cowen*, 547. 1 *Louisiana Rep.* 430. 2 *id.* 352.) The assignments being fraudulent, the judgment and the bill must fall with them. (1.) The principal assignment, which was of all the residue of the property of J. W. & R. Leavitt, or of either of them, was made July 31st, 1845. (2.) The amicable judgment was confessed July 26, 1845 ; the execution thereon was issued and returned *by consent* on the 28th ; and the bill prepared on the 30th, before the assignment, and with a view to it. (3.) Immediately after the assignment of the 31st of July, and on the same day, the bill was filed, the subpœna and injunction served. (4.) The judgment and the creditor's bill could be of no avail except in the event of the assignments failing, for the assignments transferred every thing. (5.) Precisely that state of things existed that induced the court to declare a confession fraudulent, in *Mackie* v. *Cairns*, (5 *Cowen*, 547.) (*See per Colden, senator*, 570 *to* 575. *S. C. Hopk.* 373.) If this device of the judgment and subsequent proceedings can avail, it is the most simple thing in the world to escape the penalty of a fraudulent assignment. The assignee claims under the assignment so long as it is not attacked, and then, and not till then, falls back upon his judgment. (4 *Sand. S. C. R.* 260, 1. 4 *East,* 554.)

VII. There should be a decree declaring the several assignments A, B, C, D, E, F, G, H, I, J, K and L void, and directing an account of all the proceedings of David Leavitt as assignee, in connection with Vandervoort, or alone, from the beginning. (1.) The court cannot determine what final decree it would be proper to make until an account shall have been taken. (2.) If the decree should go further, it must necessarily be in various alternatives, according to the results of the account. (3.) It may be that the account will show such a state of the

assets as to obviate the necessity of deciding many difficult questions.

VIII. If the court should think fit, at this time, to consider the liabilities of the assignee, then we insist that the decree should charge the assignee with liability to the creditors for all the estate received by him, allowing credit to him only for such sums as he may have paid out, under the assignments, to other creditors, before the plaintiffs acquired a lien by filing their original bill. (1.) There is no reason in principle why the assignee should be permitted to retain, for his own demand. He can claim nothing upon the principle of set-off. He can claim under the assignment, and under that alone. If the creditors do not avoid it, he pays himself according to the trust. If they avoid it, the assignment is still good as against him, and as against the judgment debtor, and as *between* them. It is only toward the judgment creditor that it is a nullity. It is only under and through the assignment that the assignee could possibly make a title at law or in equity. (*Henriques* v. *Hone*, 2 *Ed. Ch. R.* 120. *S. C.* 13 *Wend.* 240.) (2.) As respects his own debt, he can claim nothing upon the allegation that he has in good faith *parted with* the proceeds of the assigned property to creditors. Such allegation *is not true in fact.* (3.) Where the money has once been paid over, the hardship of a second payment recommends the case to a favorable consideration. But the assignee, as to his own debt, can plead no such hardship. He is simply in the condition of other creditors at large. He cannot be said to have parted with the money, when at most he took it from one pocket and put it in another, or made an entry upon his books. If he be entitled at all, he would be entitled without any such act. (4.) Nor, as between the assignee of a debtor and the pursuing creditor, is there any question of hardship to be considered. The question is, which one of two parties *must lose?* The law will favor him whose conduct is unexceptionable, rather than him who, at best, can only claim that his trespass against the law is not of a kind peculiarly marked with moral blemishes. (5.) He need not accept the assignment unless he chooses. The assignee leans upon the

assignment. The law adjudges that assignment a fraud—that it necessarily hinders and delays creditors. The assignee is a party to the fraud. Can the court, in the same breath, brand the fraudulent act, and say to one of the principals, take and keep the avails of your fraud? In *Masters* v. *Miller*, Lord *Kenyon* says: "No man shall be permitted to take the chance of committing a fraud without running any risk of losing by the event, when it is detected." (4 *Term Rep*. 320, 329.) Nor, in such a case, can the court distinguish between fraud in fact and fraud in law. (6.) Fraud in fact would be made out, if a design to delay creditors were proved, outside of the written instrument. Fraud in law is where the parties see fit to avow their fraudulent design upon the face of the assignment. In either case the assignment is good between the parties, but void as to creditors. The same result must follow the setting aside the assignment in one case as in the other. (*See Riggs* v. *Murray*, 2 *John. Ch. Rep.* 565, 582; *Ames* v. *Blunt*, 5 *Paige*, 13, 19, 20, 21.)

IX. In the case last cited (5 *Paige*, 13) the chancellor thought, by reason of the great delay, (near five years, from January, 1823, to October, 1827,) that all the acts of the assignees ought to be affirmed, even the payments to themselves. But in our case this ingredient of delay is wanting. J. W. & R. Leavitt made their last assignment July, 1845. Judgment was recovered July 14, 1847. The bill was filed January, 1848. Here was no unusual delay, considering the magnitude of the estate, and that it was scattered over the United States, and would require a long time to collect it together. Besides, the assignments were impeached in the Nicholson and in other suits, as early as March, 1847. This was notice, at the least, to the assignee, and if, after that time, he proceeded with the distribution of the estate, he did it at his peril.

X. In no event can the assignee claim a credit for payments made after the filing of the original bill. (1.) The plaintiffs, by the commencement of their suit, acquired an equitable lien on all the property of J. W. & R. Leavitt which could not be reached by execution. (*The Albany City Bank* v. *Schermer-*

*horn*, 1 *Clarke*, 297. *Storm* v. *Waddell, and De Kay* v. *Same*, 2 *Sand. Ch. R.* 494, 514, *&c.* *Boynton* v. *Rawson*, 1 *Clarke*, 584. *Edmeston* v. *Lyde*, 1 *Paige*, 637. *Beck* v. *Burdett*, 1 *id.* 305.) (2.) To make the lien perfect as to the assigned property, it was not necessary, in the first instance, to join the assignee as defendant. The lien was created by the filing the original bill and serving the subpœna. It could be enforced against the assignee, either by an amendment to bring him in as defendant, or by a suit in the name of the receiver. In either event, the lien, as against the assignee, would date as of the day of the commencement of the original suit. (*See Green* v. *Bostwick*, 1 *Sand. Ch. Rep.* 185; *Parker* v. *Browning*, 8 *Paige*, 391.) (3.) Lis pendens was notice to the assignee and to all the world. (*Murray* v. *Ballou*, 1 *John. Ch. R.* 577 *to* 580. *Edgel* v. *Haywood*, 3 *Atk.* 352, 357.) (4.) The counsel for David Leavitt appeared as the solicitors of J. W. & R. Leavitt in these suits. (5.) This, and the suits of Nicholson, and many others which were pending, authorize the conclusion that the assignee was apprised of all the proceedings of the creditors. (6.) The assignee cannot claim that any payments made by him since the original bill, were made innocently, and that he should be protected.

XI. The decree of the special term should be reversed, and a new decree made, in conformity with the principles above stated.

*G. N. Titus*, for the respondents. I. The right of David Leavitt to hold the debts, claims and property mentioned in schedules C and D, annexed to his answer, as security for the payment of the moneys owing to him by the firm of J. W. & R. Leavitt, is not denied by the plaintiffs. The amount of their indebtedness to him exceeded the amount of these securities.

II. All the assignments referred to in the bill were adjudged valid in the case of *Nicholson* v. *Leavitt*, (4 *Sandf. S. C. R.* 276.) The court of appeals decided that the provision, in several of these assignments, *authorizing a credit, in the discretion of the trustees, upon the sale of the property, avoided the trust as to*

*a judgment creditor.* (2 *Selden*, 510.) Upon no other grounds was either of said assignments adjudged invalid, and the judgment of the superior court remains undisturbed, except in that particular.

III. Each of the assignments in question was made to secure the payment to David Leavitt of moneys by him advanced to or paid for account of the firm of J. W. & R. Leavitt, and all fraudulent intent is denied. (1.) The original indebtedness of the firm to him remained after the delivery and acceptance of the two bonds and mortgages executed by John W. Leavitt for a part of that indebtedness. (*Day* v. *Leal*, 14 *John*. 404. *Ex parte Clowes*, (2 *Bro. C. R.* 595. *David* v. *Ellice*, 5 *B. & C.* 196.) (2.) If the partnership debt was extinguished at law, *pro tanto*, the firm was liable in equity until both bonds were paid. (3.) The mortgaged premises at Hoboken, and the Barclay street property, were each ample security for the payment of the bonds of J. W. Leavitt for $4000 and $20,000. (4.) The alleged preference given to David Leavitt by the firm of J. W. & R. Leavitt, in respect to the supposed individual indebtedness of the members thereof, would constitute no fraud against their creditors. The right of joint creditors to have the partnership property first applied to the discharge of the partnership debts, can be worked out only through the medium of the partners. No such right exists as against an assignment of partnership property executed by all the members of the firm. (*Nicholson* v. *Leavitt*, 4 *Sand.* 298. *Ex parte Ruffin*, 6 *Ves.* 126. *Ex parte Williams*, 11 *id.* 7. *Ex parte Kendall*, 17 *id.* 526. 2 *Story's Eq.* § 1253. 1 *id.* § 675. *Kirby* v. *Schoonmaker*, 3 *Barb. Ch.* 46.)

IV. The execution of each of these assignments of personal property was accompanied by an immediate delivery, and followed by an actual and continued change of possession of the property thereby transferred. The employment of J. W. Leavitt by the assignees, to act as their agent, was proper and for the best interest of the creditors. (*Nicholson* v. *Leavitt*, 4 *Sand. S. C. Rep.* 272. *Hennessy* v. *Western Bank*, 6 *Watts & S.* 300. *Cunningham* v. *Freeborn*, 11 *Wend.* 240.) These assignments were not made upon any agreement or assurance that either of

the assignors should have any agency in the management of the trust estates. John W. Leavitt received from said assignees only a fair compensation for his services as their agent, prior to July, 1847. His agency ceased before the commencement of this action.

V. The plaintiffs are entitled to no relief as against the assignments B, C, D, E, F and G. The property embraced therein consisted entirely of lands in different states, all lying out of the state of New York. (1.) The validity of these assignments must be determined by the *lex loci rei sitæ*. (*Chapman* v. *Robertson*, 6 *Paige*, 627. *Hawley* v. *James*, 7 *id*. 219. *Nicholson* v. *Leavitt*, 4 *Sandf. S. C. R*. 276. *Waterhouse* v. *Stansfield*, 12 *Eng. Law and Eq. Rep.* 206. *Story on Confl. of L.* §§ 365, 428, 436. *Smith* v. *Jackson*, 2 *Edw. Ch*. 28.) This is an international rule in regard to the conveyance of lands which cannot be varied by any general law of partnership existing in this state. (*Platt* v. *Oliver*, 3 *McLean*, 27. *Hosford* v. *Nichols*, 1 *Paige*, 226. *Yeatman* v. *Woods*, 1 *Yerger*, 20.) Their validity cannot be determined by the *lex domicilii* of the assignors, although the lands were acquired with partnership funds. (*Binney's case*, 2 *Bland's Ch. R.* 146. *Bell* v. *Phyn*, 7 *Ves.* 453. *Balmain* v. *Shore*, 9 *id*. 501.) (2.) In the United States land, purchased with partnership funds for the use of the partnership, is considered personal property, *so far only* as to subject it to the payment of partnership debts. In all other respects it is considered as realty. (*Coll. on Part.* § 135. *Buchan* v. *Sumner*, 2 *Barb. Ch.* 200. *Buckley* v. *Buckley*, 11 *Barb.* 44, 65. *Platt* v. *Oliver*, *supra*. *McAlister* v. *Montgomery*, 3 *Hayw. R.* 94. *Edgar* v. *Donnally*, 2 *Munf.* 387. *Andrew's Heirs* v. *Brown, adm'r*, 21 *Alab. R.* 442. *Hunt* v. *Benson*, 2 *Humph.* 461. *Matlock* v. *Matlock*, 5 *Ind. R.* 404. *Woodbridge* v. *Wilkins.* 3 *How. Mis. R.* 360. *Smith* v. *Jackson*, *supra*. *Dyer* v. *Clark's Adm'r*, 5 *Metc.* 576. *Stor. Eq.* § 512. *Story on Confl. of Laws*, § 523.) (3.) The validity of these assignments must be determined by the local law, whether the lands are considered as real or personal property. (2 *Bland's Ch. R.* 146.) They have violated no rule of equity, as the pro-

ceeds of the lands are to be applied to the payment of the partnership debts of the assignors. The trust to sell for cash or upon credit, as the assignees should think reasonable and proper, is not in violation of the *lex loci*. (*Ashurst* v. *Martin*, 7 *Porter*, 566. *Abercrombie* v. *Bradford*, 16 *Alab. Rep.* (*N. S.*) 560. 17 *Barb.* 370, 1.) (4.) The provision authorizing a sale upon credit alone should be adjudged void if unauthorized by the local law, and the assignments in other respects should be adjudged valid, *ut res magis valeat quam pereat.* Such is the rule of the common law. (*Darling* v. *Rogers*, 22 *Wend.* 483.)

VI. The plaintiffs are entitled to no relief, as against the assignment A. (1.) The merchandise &c., embraced in this assignment, was at New Orleans, and the domicil of J. W. Leavitt, one of the assignors, was in New Jersey at the time of its execution. It is not in proof at what place it was executed, but it was made with reference to the laws of Louisiana, and the question whether, as to its form or provisions, it was sufficient as against creditors to vest in these assignees the property thereby assigned, must be determined by the laws of that state, or of the state of New Jersey. (*Fanning* v. *Consequa*, 17 *John.* 518. *Lanfear* v. *Sumner*, 17 *Mass. R.* 110. *Oliver* v. *Townes*, 14 *Martin*, 102. *Price* v. *Morgan*, 7 *id.* 70. *Story on Confl. of Laws*, §§ 385–7, 390, 38. *Hutchinson* v. *Smith*, 7 *Paige*, 26.) There are exceptions to the rule that personal property has no locality, but must be transferred according to the *lex domicilii.* (*See Story on Confl. of Laws*, § 383, note 4.) (2.) The trust created by this assignment can be carried into execution by the assignee without an exercise of the power to sell on credit, and without violating any existing law. It is not in proof that the assignees have exercised that power in a single instance. This assignment of property in New Orleans should be adjudged valid, except as to the provision to sell on credit. (*Darling* v. *Rogers*, 22 *Wend.* 487. *Salmon* v. *Stuyvesant*, 16 *id.* 323. *Root* v. *Stuyvesant*, 18 *id.* 287. *Hone's Ex'rs* v. *Van Schaick*, 20 *id.* 569.) The decision of the court of appeals in *Nicholson* v. *Leavitt*, (2 *Seld.* 510,) has unsettled, but has not overthrown the doctrine of the cases above cited. (*Curtis* v. *Leavitt*, 17

*Barb.* 370. *Kellogg* v. *Slauson,* 1 *Kernan,* 302.) (3.) The plaintiffs, by this action, have acquired no lien upon the property embraced in the assignment, which was the *joint property of J. W. & R. Leavitt, and Frederick T. Mygatt.* The plaintiffs are not the creditors of Mygatt. He had the right to make an assignment of their *joint* property with the concurrence of the Leavitts; to the provisions of which the plaintiffs *as the creditors of J. W. & R. Leavitt* cannot object. (*Story on Part.* § 101, *note* 3. *Cases under third point, 4th division.*) Mygatt is a necessary party to this action to avoid this assignment. Joseph C. Vandervoort is also a necessary party.

VII. The assignments H, I and J contain no provision authorizing the assignees to sell on credit, and should be adjudged valid as against the plaintiffs.

VIII. In any decree that may be made in this cause in regard to the validity of these assignments, the lien of D. Leavitt upon the securities and property acquired before, or held by him, at the time of their execution, and his right to their proceeds should be confirmed and established. His rights are expressly reserved in each assignment.

IX. All acts done in good faith before the commencement of this action, by the assignees or either of them, in the execution of the trust created by said assignments, should be allowed and confirmed; neither of them should be held accountable for any money paid by them, or either of them, to any preferred creditor, or applied towards the payment of any preferred debt, pursuant to the provisions of said assignment, before the commencement of this suit against him. (*Wakeman* v. *Grover,* 4 *Paige,* 24, 43. *Ames* v. *Blunt,* 5 *id.* 13, 19. *Barney* v. *Griffin,* 4 *Sand. Ch.* 552. *Strong* v. *Skinner,* 4 *Barb.* 561. *Andrews* v. *Ludlow,* 5 *Pick.* 32.) (1.) The assignees, by the acceptance of these assignments, became vested with the legal title to all the assigned property, and were bound to execute the trusts created thereby. (*Cunningham* v. *Freeborn,* 11 *Wend.* 240, 247. *Leitch* v. *Hollister,* 4 *Comst.* 211, 215. *Henriques* v. *Hone,* 2 *Edw. Ch.* 120.) (2.) These assignments are valid as between the assignors and assignees, and as to all the cred-

itors who have not dissented; they are only *voidable* as to dis-senting creditors. The delay of these plaintiffs in making D. Leavitt a party to their original suit, warranted the assignees in presuming their *assent* to these assignments, until their dissent was manifested by the service of the subpœna upon the assignee, in October, 1850. (*Ames* v. *Blunt,* 5 *Paige,* 13, 19.) (3.) No *suit was commenced* by these plaintiffs to set aside these as-signments until the service of the subpœna under amended bill upon David Leavitt. (*Story's Eq. Pl.* § 904. *Fitch* v. *Smith,* 10 *Paige,* 9. *Griffith* v. *Griffith,* 1 *Hoff. Ch.* 153. *Hayden* v. *Bucklin,* 9 *Paige,* 512. *Steward* v. *Roe,* 2 *P. Wms.* 435. *Boynton* v. *Rawson,* 1 *Clarke's Ch.* 584. *Roberts* v. *Jackson,* 1 *Wend.* 478.) (4.) Allowance should be made to the assignee, in passing his accounts, for all moneys paid to judgment credit-ors, who had acquired a lien on the trust fund prior to the plain-tiffs. (5.) This assignee should be allowed his costs in this action, out of the fund. (2 *Barb. Pr.* 328. *Grover* v. *Wake-man,* 11 *Wend.* 226.) He has acted in good faith, under the provisions of assignments which have been approved by repeated decisions. He is also entitled to the usual commissions, and to all reasonable expenses incurred in the administration of the trust. (*Riggs* v. *Murray,* 2 *John. Ch.* 565.)

X. The validity of the sale of the furniture and other personal property of J. W. Leavitt to David Leavitt, must be determined by the laws of the state of New Jersey, in which the defendant, John W. Leavitt, was domiciled at the time the sale was made. (*Story on Conf. of Laws,* § 383.) (1.) The possession of the vendor after sale of personal property in that state is not, *per se,* fraudulent as against creditors. (*Sherron* v. *Humphreys,* 2 *Green,* 217.) (2.) In New Jersey fraud cannot be *presumed,* but is a question for the jury, *and must be established* by proof. (*Mount* v. *Hendrickson,* 2 *South.* 738, 743. *Tillou* v. *Britton,* 4 *Halst.* 121, 136, 138.) (3.) David Leavitt cannot be made liable to account for the value of this furniture. It was not in his possession at the commencement of this suit. There is no evidence that he ever received the proceeds thereof. (*Nicholson* v. *Leavitt,* 4 *Sand. S. C. R.* 269.)

D'Ivernois v. Leavitt.

XI. In the entering of the judgment and the filing of the bill, on the 26th day of July, 1845, in the name of David Leavitt, against J. W. & R. Leavitt, referred to in the pleadings in this cause, there was no fraud intended or committed against the plaintiffs, or any person whosoever. All fraud in relation to these proceedings is fully denied in the answer. (1.) The reason and object of entering the judgment and filing the bill last referred to, are fully and satisfactorily explained in the answer, and are consistent with good faith and honesty of purpose towards creditors. (2.) The object of this judgment and bill was not to aid and give effect to an illegal assignment, but to secure the payment of an honest debt, independent of any of the assignments that had been previously made. (3.) The plaintiffs have not been hindered in the prosecution of their claim to this assigned property, in consequence of this creditor's bill. (4.) The defendant, David Leavitt, had an undoubted right to take this judgment, and file this creditor's bill, as a mode of collecting his debt, irrespective of the assignments ; and to prosecute or suspend the prosecution of that suit, as he thought most conducive to his interests, without subjecting this proceeding to the imputation of fraud. (McBroom v. Turner, 1 Stewart, 72.)

XII. The judgment of the court at special term should be affirmed with costs.

CLERKE, J. The rights relating to the acquisition, enjoyment and disposition of real property, are prescribed and regulated, exclusively by the laws of the country in which the property is situated. Every community, independent and sovereign, possesses this power, as an inherent and essential element of its sovereignty. No other community can interfere with the method by which real property may be acquired or lost, the tenure by which it may be held, the duration or quantity of interest in it, or the conditions to which the enjoyment of it is subject; but an instrument purporting to dispose of real property situated in another state or country, may nevertheless be within the reach of the laws of the state in which the instrument is executed, and may be assailed on the ground, for instance, that the instrument

was in fraud of its own citizens, or that it was obtained fraudulently from the grantor.   It appears to me that this is as essential an element of sovereign power in the state, in which the fraud is perpetrated, as the power of which I have above spoken is essential to the sovereignty of the state or country in which the property is situated.   No country can efficiently discharge its functions unless it can protect its citizens against fraud; and this it never could do, unless it can exercise its authority in repressing or redressing fraud, over every one within its jurisdiction, over every wrong committed within it, and over every means by which the commission of fraud is attempted.   I therefore think, that although many of the assignments in question relate to real and personal property in other states, if our law deems them fraudulent, it is within the province of this court to declare them void.   The assignments marked as schedules A, B, C, D, E, F, G, K and L, contain the clause allowing the assignee to sell on credit, and are clearly within the *principle* established in *Nicholson* v. *Leavitt*, (2 *Seld.* 510.)   The ground that schedule A is distinguishable from the rest, because another joint owner of the property, not liable to the plaintiffs, united with R. & J. W. Leavitt in the conveyance, is not tenable. The property assigned is not merely of the joint interest, but that of each of the assignors.   The assignments, marked as schedules H, I and J, do not contain the clause authorizing a sale upon credit; but, in my opinion, they each contain one equally obnoxious.   They allow the assignee to withhold the division and distribution of the assets for any length of time, which he in his discretion may think proper.   This, if carried out, gives him a coercive power over the creditors, arming him with the means of constraining them to a commutation or release of their claims.   It is, in a great measure, to prevent and ignore such a design, that courts of justice have so generally, of late, evinced a disposition to avoid all instruments investing the assignee with any discretion beyond what is absolutely inseparable from the performance of his trust.   A power to sell on credit invests him with a discretion to protract, indefinitely, the satisfaction of the claims of creditors, and the final reckoning and

settlement of the trust; the very thing which he is directly and expressly authorized to do by the clause to which I have referred in schedules H, I and J, which I perceive is also contained in A and L.

The decision in *Mackie* v. *Cairns*, (5 *Cow.* 547,) is analogous to this case, in relation to the judgment confessed by J. W. & R. Leavitt to David Leavitt. In the language of Senator Colden, " if the judgment was an independent transaction between the parties it would be valid. Where a security is taken which is defective, questionable, or even fraudulent, a party may take a new security that may be free from objection. But, he must abandon the objectionable or fraudulent security. He cannot hold the good security, and yet avail himself of that which is vicious. Much less can he make the new security a means of sustaining that which was illegal." In the present case, the assignee holds fast tenaciously to the assignment and to the judgment; and, by the aid of both, endeavors to effectuate an intent manifested in the assignment, which the law, in my opinion, declares fraudulent and void. The cases are parallel; and the judgment must abide the fate of the assignments.

With regard to the sale of the personal property at Weehawken, I think we have no jurisdiction over it. The sale was made, and the property was delivered in New Jersey. By the answer of Mr. David Leavitt, and according to the evidence of J. W. Leavitt, the bill of sale, with the inventory, was made out and delivered on the premises, with the property. The validity of the transaction, both as to the sale itself, and the extrinsic acts, simultaneous with or subsequent to it, must be determined by the laws of New Jersey.

I think there should be no direction to the referee at present, as to any amounts which he has applied in discharge of debts due to himself. It will be better to reserve that question until the coming in of the report; of course, the referee may ascertain the amounts so applied without crediting him at present for them in the account.

The decree of the special term should be reversed with costs,

and a new decree settled in conformity with the principles which I have indicated in this opinion.

DAVIES, J., concurred.

ROOSEVELT, J., dissented, in part.

Decree reversed.

[NEW YORK GENERAL TERM, September 8, 1856. *Roosevelt, Davies* and *Clerke,* Justices.]