## DUNHAM and DIMON *v.* WATERMAN, HECKERS and ROWELL.

A judgment confessed under sections two hundred and eighty-two and two hundred and eighty-three of the Code, for a just debt, is to be deemed fraudulent and void as to other judgment creditors of the debtor, when the statement upon which it is entered contains no further specification of the facts out of which the indebtedness arose than that it was upon a promissory note (the date, amount and time of payment of which are described), " given on a settlement of accounts," on a specified day, between the debtor and the plaintiff in such judgment.

A provision in the assignment by an insolvent debtor of all his property, consisting in part of unfinished machinery and materials in process of manufacture, the completion of which was necessary. to an advantageous sale, authorizing the assignees to complete the manufacture and work up the materials at the expense of the assigned fund, as in their judgment might be advisable so as to realize the greatest amount of money therefrom, renders the assignment fraudulent and void on its face, though an actual fraudulent intent, except as thereby manifested, is disproved.

The case of *Cunningham* v. *Freeborn* (11 *Wend.*, 240), so far as it conflicts herewith, overruled.

A debtor who makes a voluntary assignment for the benefit of his creditors may direct in general terms a sale of the property and collection of the dues assigned, and may also direct upon what debts and in what order the

Dunham *v.* Waterman.

proceeds shall be applied, but *it seems* that beyond this he can prescribe no conditions whatever in respect to the management or disposition of the assigned property.

*It seems* that an insolvent's assignment may be void for expressly vesting in the assignee a discretionary power which might be legally exercised by him, in the absence of such a provision, under his general responsibility as a trustee and subject to the control of the courts. *Per* SELDEN, J.

APPEAL from the Superior Court of the city of New-York. The plaintiffs brought their action, as judgment creditors of Waterman, to have set aside, as fraudulent and void, a judgment confessed August 25th, 1851, by Waterman to the defendants, J. & G. Hecker, and an assignment to them, executed the same day, of all Waterman's property, which, by its terms, was declared to be collateral to and in aid of the said judgment and of a levy which had been made, under an execution issued thereon, upon Waterman's personal property; and also to set aside and avoid all proceedings had under the judgment, levy and assignment, especially a sale of personal property in pursuance of such execution and levy, to the defendant Rowell. The action was tried before a referee, who found as matters of fact that on August 25th, 1851, Waterman was indebted to the Heckers in the sum of $5251.01, for which amount, he, on that day, confessed judgment without action. The statement on which judgment was entered was in these words: "This confession of judgment is for a debt justly due to the plaintiffs, arising upon the following facts: A promissory note made by me, bearing date the 22d day of August, 1851, was given by me to the said plaintiffs on settlement between me and them on the twenty-second day of that month; whereon, for value received, I promised to pay to the order of the said plaintiffs the said sum of $5251.01 one day from its date." On the same day an execution was issued upon said judgment and delivered to the sheriff of New-York, who, on the same day, levied on the machinery, stock and tools of Waterman, who was a machinist, at his machine shop. In pursuance of this levy the pro-

perty was afterwards, November 14th, 1851, sold at public auction, for $3396, to the Heckers, and they immediately thereafter made a *bona fide* sale thereof to the defendant Rowell.

On August 25th, 1851, immediately after the levy, Waterman executed an assignment of all his property to the Heckers, who took the immediate possession and management thereof. The referee found, as matter of fact, that the assignment was not fraudulent, but made in good faith, and that the defendants had not, nor had any of them, conspired to hinder, nor had they hindered, delayed or defrauded the creditors of Waterman. The assignment recited the judgment, execution and levy before mentioned, and declared that it was intended as collateral thereto "and as further and additional security to the said John Hecker and George Hecker, and is not, in any event, to stand in conflict with, or lessen, abate or affect the said execution, or the force and effect of the said levy, and the lien created thereby." It further recited that it was contemplated that the Heckers might "make certain advances or payments on account of the business which has been carried on by the undersigned (Waterman), and in the execution of this trust." It provided that the assignees should first "pay any such sum or sums of money as they may find proper and expedient in and about the management of the said property, or payment of hands employed or to be employed in and about the same, or in the business of completing the manufacture of any of the said property, or fitting the same for sale, or of working up materials, &c., so as to realize the greatest possible amount of money therefrom, as in the judgment of the said John Hecker and George Hecker shall seem most advisable." The referee further found that much of the property assigned was unfinished machinery and engines in the process of manufacture, the completion of which was necessary to procure an advantageous sale. He reported that the plaintiffs were entitled

to no relief, and judgment was thereupon entered for the defendants, which was, upon appeal, affirmed by the Superior Court, at general term. The plaintiffs appealed to this court.

*J. W. Edmonds,* for the appellants.

*James Crombie,* for the respondents.

SELDEN, J.   The plaintiffs, as subsequent judgment creditors of the defendant, Henry Waterman, seek to set aside the judgment confessed, and the assignment made by Waterman to the defendants John and George Hecker, on the 25th of August, 1851, as fraudulent and void. The objection to the judgment is, that it was confessed without a compliance with the second subdivision of section three hundred and eighty-three of the Code. Previous to the judgment of this court in the case of *Chappel* v. *Chappel* (2 *Kern.,* 215), the true interpretation of the subdivision in question was involved in much obscurity and doubt; and several conflicting decisions had been made on the subject by different branches of the Supreme Court. It was, however, settled, in the case referred to, that the object of the provision was the same as that of section six of chapter two hundred and fifty-nine of the Laws of 1818, viz., to protect the other creditors of the judgment debtor against fraud, " by compelling the parties to spread upon the record a more particular and specific statement of the facts out of which the indebtedness arose." (*Per* GARDINER, J.)

It was accordingly held in that case that a statement, setting forth that the confession was for a debt justly due to the plaintiff upon two promissory notes, payable to the plaintiff or bearer, stating the date, amount and time of payment of each note, and that the same were "justly due" to the plaintiff, was not a sufficient compliance with

the provision in question. The only material difference between the statement in that case and in this, is, that here it is stated that the note described was given by the defendant in the judgment to the plaintiff therein, " on settlement of accounts" between them, on the 22d of August, 1851, the day on which the note was dated.

I do not see that the allegation, that the note was given on " settlement of accounts," can add very materially to the information which the statement affords. In the case of *Lawless* v. *Hackett* (16 *John.*, 149), which arose under the act of 1818, the late Supreme Court said : " The specification ought to be so particular and precise as to apprise all persons interested of the *nature and consideration* of the debt. A statement as general *as the common counts*, in a declaration, is not sufficient. It ought to be as special and precise as a bill of particulars." If the reasoning of the court in that case is applicable to cases arising under the Code, as was held by GARDINER, J., in *Chappel* v. *Chappel* (*supra*), then it is clear that the statement, in the present case, is wholly defective. It is true there is a wide difference in phraseology between the act of 1818 and the section of the Code in question. The former required a " particular" statement and specification of " the nature and consideration" of the debt or demand ; and where the demand arose upon a note, bond or other specialty, the " origin and consideration" of the same was required to be " particularly set forth ;" while the Code, in terms, simply requires a statement " of the facts out of which the indebtedness arose."

But when it is considered that the objects of both statutes was precisely the same ; that to accomplish this object, much, at least, of the particularity contemplated by the act of 1818 would be necessary ; and that, in contemplation of law, the legislature, in enacting the section in question, had the act of 1818 before them, it would seem that the Code must have intended to require by implication

what is in terms required by the previous statute. It is unnecessary, however, to go to this extent here. A requirement far short of this would be fatal to the judgment in this case. A mere statement, that the note was given upon a settlement of accounts, conveys no information of any value. Something, at least, should be stated as to the nature of the account and the time when it accrued, even if all the minuteness necessary in a bill of particulars should not be required.

But it is contended by the respondent's counsel that, conceding the statement upon which the judgment was confessed to be defective, such defect amounted merely to an irregularity, for which the only remedy was by motion to set aside the judgment. This position cannot be sustained. It is true that, for a mere irregularity in a matter of practice, the proper remedy is by motion. But the defect here is of a different nature. The object of the statute being to protect the creditors of the party confessing the judgment against fraud, its violation forms a proper subject of equitable jurisdiction. The provision does not relate to a mere matter of form, or the manner of conducting a judicial proceeding, but is one which affects substantial rights. It virtually constitutes a condition precedent to the right of the party to confess the judgment at all. Although the Code does not in terms enact, as was done by the act of 1818, that a judgment confessed without a compliance with its provisions shall be " decreed and adjudged fraudulent" in respect to " other *bona fide* judgment creditors," yet, considering the object in view, it is plain that such must be its meaning.

The decision of this court in the case of *Chappel* v. *Chappel* (*supra*) was, in substance, that the judgment having been confessed without a compliance with the provisions of the Code, it was to be deemed fraudulent and void as to the other judgment creditors of the defendant, and that the Supreme Court was right in setting it aside upon that.

Dunham *v.* Waterman.

ground. That the same end might have been attained by an original suit is clear. The doubt in such cases has been, not whether a court of equity has jurisdiction to set aside the judgment in a suit instituted for that purpose, but whether this equitable power could be exercised, by the court in which the judgment is entered, upon motion. (*Brinckeroff* v. *Marvin,* 5 *John. Ch. R.,* 320.)

If the judgment is defective for the reason assigned, there is no doubt of the right of the plaintiffs to institute this suit for the purpose of setting it aside. So far as the judgment itself is concerned, the object might have been attained by a mere motion; but as the assignment could not have been thus reached, this suit is properly brought to determine at once the validity of both.

Our next inquiry, then, relates to the validity of the assignment. The last paragraph of this document declares that it is made in trust that the assignees shall collect such debts as are collectable, and compromise such as are doubtful, " and apply the proceeds to the following purpose, that is to say : First. To pay any such sum or sums of money as they may find proper and expedient, in and about the management of the said property, or payment of hands employed or to be employed in and about the same, or in the business of completing the manufacture of any of the said property, or fitting the same for sale, or working up materials, &c., so as to realize the greatest possible amount of money therefrom, as in the judgment of the said John Hecker and George Hecker shall seem most advisable," &c. It is insisted that this clause, which virtually authorizes the trustees to complete the manufacture of any unfinished machines and to carry on the business of the assignor, for the purpose of working up the materials on hand, renders the assignment fraudulent and void, as to creditors.

General assignments in trust for the payment of debts are, for the most part, an American device. In England, such an assignment, by a trader, a term which is held to embrace

nearly every man of business, is considered an act of bankruptcy; and the commission issued supersedes the assignment. The history of these assignments in this state tends to show that they were originally an invention by debtors in failing circumstances, designed, not for the benefit of their creditors, but to perpetuate their own control over the property in their hands.

Our courts have been successively called upon to condemn, as fraudulent, assignments reserving to the debtor either some portion of the assigned property; or a power of revocation of the trust; or of future direction as to the trust fund; or requiring the creditors to release the debtor as a condition of sharing in the proceeds of the property; or authorizing the assignee to sell upon credit, &c. But when purified of all these badges of fraud, there is still some difficulty in sustaining such assignments upon principle, and in the face of the statute (2 *R. S.*, 137, § 1), because they manifestly tend to delay and hinder those creditors who are disposed to pursue their legal remedies against the debtor's property.

The argument in support of voluntary assignments would be greatly strengthened, if, when resorted to, they were made to answer the ends of a commission in bankruptcy, by producing a suitable distribution of the fund among all the creditors; since in that case, the principle that equality is equity might be urged, in opposition to a claim founded upon a priority of legal right. But, instead of this, the creditor who is in advance of all others, in respect to his legal rights, may be put in the last class, or may become postponed to all others. I make these suggestions, not for the purpose of throwing doubts upon the validity of assignments, when properly made, but to show that they should not be permitted to substitute the will of the debtor or of his assignees, or even their discretion, for the judgment of the courts, as to the time or manner of appropriating the property of such debtor to the payment of his

debts, beyond what necessarily results from its being placed in the hands of trustees for that purpose.

The respondents in this case rely upon the decision of the late Court of Errors in the case of *Cunningham* v. *Freeborn* (11 *Wend.*, 240). It must be conceded that, if all the members of the court who voted to affirm the decree in that case are to be understood as concurring in what was said by Mr. Justice NELSON, the decision is a direct authority in favor of the respondents, upon the point raised here; and although other important questions were there presented, upon some of which the case might have turned, yet, as no member of the court expressed any dissent or intimated any other ground for his decision, it should, perhaps, be assumed that the opinion delivered expressed the views of the majority of the court. It will be found impossible, however, to reconcile these views with those since expressed by this court in several cases, and particularly in that of *Nicholson* v. *Leavitt* (2 *Seld.*, 510). The whole reasoning of GARDINER, J., in that case, in which it appears that five at least of his associates concurred, is in direct hostility to the decision in *Cunningham* v. *Freeborn*, upon the point we are now considering. He says: "It has always been understood that, when an individual has incurred an obligation to pay money, the *time* of payment was an essential part of the contract; that when it arrived the law demanded an immediate appropriation by the debtor of his property, in discharge of his liability, and, if he failed, would itself, by its own process, compel a performance of the duty. The debtor, by the creation of a trust, may direct the application of his property, and may devolve the duty of making the appropriation upon a trustee. This the law permits; and *such delay as may be necessary for that purpose.* But the debtor cannot in this way avoid the obligation of immediate payment, or extend the period of credit, without the assent of the creditor. The attempt to do this, however plausible the

pretence, is in conscience and in law a fraud, and nothing else."

These remarks were made in reference to an assignment which contained a clause authorizing the assignee to sell upon credit, but they apply with equal force to the case before the court. The principle asserted is, that the debtor can authorize no delay whatever, except such as is necessarily incident to the creation of the trust. In another part of his opinion, Judge GARDINER, in speaking of the right of a debtor to prefer one creditor to another, and to make a voluntary assignment, says: "Of course the delay to creditors necessarily resulting from a fair exercise of these rights is not prohibited by any statute; but this delay must be incidental and necessary to the existence of the trust or the exercise of the power."

It is obvious that the delay consequent upon vesting in the trustee a discretionary power to continue the business of the debtor, whatever may be the motive, may be as great as that produced by a power to sell upon credit; indeed, it may be regarded as more objectionable in this respect, for the reason that, in case of a sale upon credit, the security taken may be immediately sold and converted into cash in place of the property it represents.

The question, then, is presented whether this court will adhere to the spirit of its own decision in the case of *Nicholson* v. *Leavitt*, or, by following the case of *Cunningham* v. *Freeborn*, uphold assignments in one class of cases, and condemn them in another, where no shadow of difference in principle exists between them. I may remark that, since that case was decided, various cases have arisen in this state, in which the principles applicable to voluntary assignments have received a more thorough examination than had previously been bestowed upon them, and the tendency of the court has uniformly been to a more and more rigid limitation of the discretionary powers to be vested in the assignee. To follow the case of *Cunningham* v.

*Freeborn* now, therefore, would not only produce the incongruity in doctrine which has been pointed out, but would be an act of decided retrogression in respect to the principles applicable to this class of cases.

It is said that if manufactured articles are assigned in such a state that it is obvious that, by a comparatively small expenditure of money in completing them, their value will be very greatly increased, it would be the duty of the trustee to make the expenditure for the sake of the creditors; and it is insisted that what the law would justify the assignee in doing without authority from the assignor, he may be expressly authorized to do.

This position overlooks the distinction between a duty imposed by law and a power conferred by an individual. The first would be under the entire control of the courts. If an assignee should err in the exercise of that legal discretion which is incident to his trust, the courts, on application of the creditors, could correct the error. If the sale of the assigned property was unreasonably delayed, the courts could hasten it. Not so, however, in respect to a discretionary power expressly vested in him by the assignment. Nothing short of fraud or a want of good faith in the exercise of such a power would authorize the courts to interfere. If an assignment containing such a clause is held valid, it must of course be held that the debtor has a right to confer the power; that is, has a right to vest this power in the assignee as a condition upon which he parts with his rights of property. If the courts uphold this condition, must they not execute it? Can they substitute their discretion for that which the owner of the property has vested in his assignee? This question was considered in the case of *Nicholson* v. *Leavitt*, and GARDINER, J., there says: "If the debtor can create such a trust, equity cannot interpolate a provision that the fund shall be disposed of and the money realized according *to the discretion of a chancellor.*"

This position, of the correctness of which I entertain no doubt, is fatal to the assumption that such a discretionary power as that here conferred can be upheld. If the court cannot control or interfere with such a discretion, unless it is fraudulently exercised, then the creditors may be kept at bay so long as the assignee selected by the failing debtor himself may deem it expedient to retain the management of· the assigned property. This can never be tolerated. The true principle applicable to all such cases is, that a debtor who makes a voluntary assignment for the benefit of his creditors may direct, in general terms, a sale of the property and collection of the dues assigned, and may also direct upon what debts and in what order the proceeds shall be applied; but beyond this can prescribe no conditions whatever as to the management or disposition of the assigned property. In all other respects the assignee must be left to act under the ordinary rules and principles which apply to trustees in analogous cases.

There is still another question which must be briefly examined. Section four of the statute concerning fraudulent conveyances provides that, in all cases arising under that act, the question of fraudulent intent "shall be deemed a question of fact and not of law." ( 2 *R. S.,* 137.) It is contended that by this provision "fraud in law" is abolished; and that the referee having found in express terms that the assignment in question "was not fraudulent, but was made in good faith," the court cannot now pronounce the assignment fraudulent for matter appearing upon its face.

A question, in substance identical with this, was presented and passed upon in the case of *Cunningham* v. *Freeborn* (*supra*); and it would be difficult to meet and dispose of it by reasoning more clear and conclusive than that of Mr. Justice NELSON, in that case. He concedes that fraud, in all such cases, is a question of fact, and that an actual fraudulent intent must be found, either by the jury or by the tribunal which acts in its place. But he contends that

a case may be presented in which a fraudulent intent is so plainly to be inferred, from the instrument itself, that no jury would be permitted to disregard the evidence, and where it would be the clear duty of the court to set aside a verdict found in opposition to such inference. He says : " It could never have been intended by this statute, nor could it be endured in principle or in practice, that the verdict of the jury should be conclusive, if against law and evidence." He also shows that what was called " fraud in law" was not an inference of actual fraud, drawn from the provisions of the assignment itself, but was a species of fraud which the law was supposed to impute to the party, as he says : " in the absence of any fraudulent intent, and *under a concession* by the courts that there was none." This species of fraud, if it ever had any legal exist- ence, which he seems to doubt, he concedes is abolished by the statute.

It follows from the reasoning of Mr. Justice NELSON, which I regard as unanswerable, that wherever an assign- ment contains provisions which are calculated, *per se,* to hinder, delay or defraud creditors, although the fraud must be passed upon as a question of fact, it nevertheless be- comes the duty of the court to set aside the finding, if in opposition to the plain inference to be drawn from the face of the instrument. A party must, in all cases, be held to have intended that which is the necessary consequence of his acts.

The assignment, therefore, as well as the judgment, is void. It follows that the judgment of the Supreme Court at general term should be reversed, as to the defendants Henry Waterman and John and George Hecker ; but in respect to the defendant Rowell, who did not participate in the fraud, and whose purchase of the goods, for aught that appears, was made in perfect good faith, it should be affirmed with costs. As between the plaintiff and the

defendants Waterman and the Heckers, no costs are allowed to either party in this court.

All the judges agreed that the judgment was void, Strong and Roosevelt, Js., deeming it valid as to the parties, though fraudulent as to creditors. All the judges, except Pratt, J., concurred in the opinion of Selden, J., as to the invalidity of the assignment.

Judgment as above directed.