EDWARD M. TOWNSEND, Appellant, *v.* THOMAS G. STEARNS, Respondent.

In giving effect to the language of an assignment for the benefit of creditors, the same intendments are to be made in support of the instrument, the same presumption is to prevail in favor of good faith, and the same rules of construction are to be applied, as in the case of ordinary contracts and conveyances.

It is not enough to warrant the subversion of a general assignment, that its language admits of a construction consistent with a fraudulent intent, if it be not also plainly inconsistent with an honest purpose and a lawful act.

The *onus* is upon the party who alleges it to be fraudulent upon its face, to show that the instrument is vitiated by some provision affirmatively illegal.

An assignment which, either in terms or by necessary implication, authorizes sales on credit, is void; but in the absence of such authority, it is no objection to its validity that the assignor, in declaring the trust, assumes to define the general powers and duties of the assignee resulting in law from his acceptance, if he defines them correctly, and neither enlarges nor abridges them.

Held, accordingly, that an assignment is not invalidated by a direction to the assignee, to convert the property into money with all convenient speed, with full power "to sell and dispose of the assigned premises, at such time or times, and in such manner, as to him may seem to be most for the benefit and advantage of the creditors."

THE action was in the nature of a creditor's bill, to set aside a general assignment, executed by Stearns, Hutchinson & Co., a mercantile firm in the city of New York. It was claimed by the plaintiff that the assignment was fraudulent upon its face, and also that it was fraudulent in fact.

On the question of fact issues were framed in the Superior Court, and the jury found that the instrument was executed without intent to hinder, defraud or delay the creditors of the assignor.

The court adjudged that the assignment was not fraudulent upon its face.

A question was also raised as to a subsequent instrument executed by the assignors and assignee, intended to obviate any question as to the validity of the assignment upon its face. The jury found this instrument also to have been executed in good faith.

TIFFANY.—VOL. V.   27

Judgment was rendered in favor of the defendant, which was subsequently affirmed at General Term.

The provisions of the assignment, so far as they are material to the issue, appear in the opinion of the court.

*John J. Townsend*, for appellant.

I. The assignment of September 11, 1854, is void, because it expressly authorizes the assignee, in his discretion, to delay the conversion of the assigned estate. (*Jessup* v. *Hulse*, 21 N. Y., 169; *Dunham* v. *Waterman*, 17 id., 20.)

The assignee is bound to make an *immediate application* of his property; and any provision in the assignment showing a different intent will avoid the instrument; or if such intent be proved *aliunde*, it will have the same effect. (*Brigham* v. *Tillinghast*, 13 N. Y., 220; see also *Woodburn* v. *Mosher*, 9 Barb., 225; *Lyons* v. *Platner*, 9 id., 258; *Murphy* v. *Bell*, 8 How., 468; *Rogers* v. *De Forest*, 9 Paige, 275; see Opinion of Chancellor, *Curtis* v. *Leavitt*, 15 N. Y., 132; *Nicholson* v. *Leavitt*, 6 id., 521; *Schufeldt* v. *Abernethy*, 2 Duer, 537.)

II. The assignment of September 11th being void, the appellant is entitled to a reversal of the judgment below.

III. The instrument dated October 9, 1854, was inoperative to remove the objection to the original assignment, because the assignors had, by their assignment, fully parted with all their right, title and interest in this property; for, as against them, the first assignment was valid. (See opinion of Willard, J., in *Porter* v. *Williams*, 5 Seld., 152; see *Metcalf* v. *Van Brunt*, 37 Barb., 621; *Smith* v. *Howard*, 20 How. Pr., 126.)

The rights of creditors are fixed by assignment, and, without their consent, cannot be varied by any subsequent acts of parties or trustees. (Duer, J., in *Bell* v. *Holford*, 1 Duer, 78; see also *Siggers* v. *Evans*, 32 L. & Eq., 139.)

The parties to the assignment having written upon the face of the instrument an illegal purpose, it is absolutely void as to creditors, and is incapable of amendment. (*Griffin*

v. *Barney*, 2 Comst., 371; see *Nichols* v. *McEwen*, 17 N. Y., 25; per Rosevelt, J.)

For a party must, in all cases, be held to have intended the necessary consequences of his acts. (*Durham* v. *Waterman*, 17 N. Y., 21; *Nichols* v. *McEwen, supra; Mackie* v. *Cairns*, 5 Cow., 573; per Colden, Senator.)

That species of fraud termed "fraud in law," which the law is supposed to impute to the party in the absence of any fraudulent intent, and under the concession by the court that there was none, if it ever had any existence, is abolished by statute. (*Dunham* v. *Waterman, supra; Cunningham* v. *Freeborn*, 11 Wend., 240.)

A transfer of property with intent to defraud creditors is void — not only as to judgment creditors, but as to all creditors. The statute makes no distinction. (*Thayer* v. *Willett*, 9 Abb., 330; *Reade* v. *Livingston*, 2 Johns. Ch., 481.)

Whenever the injured creditor levies his process, or, after judgment, invokes the aid of a court of equity, he is entitled to satisfaction out of those assets which the assignee received under the illegal assignment, and which he has not sold to a *bona fide* purchaser; or out of the funds which he has not distributed to other creditors, before the plaintiff's lien attached. (See *Griffin* v. *Marquardt*, 17 N. Y., 28.)

There are no decisions in this State recognizing the right to modify or reform an assignment fraudulent as against creditors, which are not based upon a misconception of *Murray* v. *Riggs* (15 Johns., 571). In that case the bill was filed by an assignee in bankruptcy, of one of the assignors. The court held in substance (1) that the assignee of the bankrupt could take nothing except what the bankrupt could assign; (2) that the revocable deeds were not absolutely void and incapable of confirmation; but this was said, not against *a creditor*, but in answer to the point raised by counsel, that the instruments were void as to subsequent purchasers, under 27 Eliz.; 1 R. S., ch. 44, p. 75, § 3; (18 Johns., 527.) The opinion misquoted *Sterry* v. *Arden* (1 Johns., 271), applying to creditors the language which Chancellor Kent used in reference to *subsequent purchasers*.

The Western cases which follow the New York decisions also mistake the case of *Murray* v. *Riggs* (*supra*)*;* or *Sumner* v. *Hicks* (2 Black., 532); *Conklin* v. *Carson* (11 Ill., 503). The eastern cases proceed upon a principle never recognized in this state. (See *Merrill* v. *Englesby*, 28 Vcrm., 130; *Ingraham* v. *Wheeler*, 6 Conn., 227; and 1 Gray, 241.)

*Marshall S. Bidwell*, for respondent.

I. The assignment of September 11, 1854, was not, on its face, fraudulent or void, because the objectional provisions are such only as would have been implied, had they not been expressed. Therefore, they come within the maxim *expressio eorum quae tacite insunt nihil operatur*. Had they been omitted, the assignee would have had the same powers which they purport to confer. They are such as assignees in all cases of legal and valid assignments for the benefit of creditors, necessarily take. (*Wilson* v. *Ferguson*, 10 How. Pr., 175; *Kellogg* v. *Slausson*, 11 N. Y., 302.)

II. The first assignment being objectionable, the subsequent one corrects it, and is unobjectionable. One cannot be heard "*uno flatu*" that it was, and that it was not, void.

A deed may be valid as to some persons, and void as to others. But no one can, for one purpose, object that it is void, and at the same time insist that for other purposes, it is valid. (*Jackson d. Jones* v. *Striker*, 1 Johns. Ch., 284; *Jackson d. Young* v. *Vredenburgh*, 1 Johns., 163; *Livingston* v. *Boseus*, 2 Hill, 526.)

PORTER, J. The assignors are vindicated by the verdict from all imputations of actual fraud. Their purpose was to *pay* their creditors, and not to *hinder* them. They relinquished all their property, reserving no benefit to themselves, and devoting it unconditionally to the payment of their debts. The object of the trust was lawful, and the instrument by which it was created should be upheld, unless it is corrupted by some provision plainly illegal.

It is claimed that the assignment is defeated by a clause in the declaration of trust, providing that the assignee shall

convert the property into money, with all convenient speed, with full power "to sell and dispose of the assigned premises, at such time or times, and in such manner, as to him may seem to be most for the benefit and advantage of the creditors."

In construing the provisions of a general assignment, we are to be governed by the rules applicable to ordinary conveyances. The prevalent impression, alluded to in the opinion delivered in the court below, that there is any peculiar rigor of intendment in this class of cases, arises from misapprehension. Some diversity of opinion exists, and occasionally finds expression in the courts, as to the *policy* of our laws, in permitting a debtor, by his own act, to withdraw his property from the reach of ordinary process. It is true that it tends to the disadvantage of those not preferred; but it operates beneficially to the creditors as a class, by securing the application to the payment of debts, of a large portion of the assets, which would otherwise be exhausted by the costs, incident to a race of legal diligence between the prosecuting creditors. It tends also to such delay as may be needful in the execution of the trust; but this is common to all the creditors, and no more the subject of just complaint, than the delay unavoidably incident to the extinguishment of claims against the estate of a deceased debtor. The right exercised by the assignor is secured by the statute which authorizes the creation of these trusts, and it has never been seriously questioned in any of our judicial tribunals.

The policy of the law, in permitting the debtor to declare the *order*, in which he thinks it just that his debts should be paid, has also been occasionally the subject of judicial observation; but the right to make preferential assignments was settled, in the Court of Errors, nearly half a century ago, in the case of *Murray* v. *Riggs* (15 Johns., 571). From that time to this, it has been recognized by the legislature and upheld in the courts. It is as perfect and absolute as the rights secured by law to the creditor; and when either become the subject of judicial determination, the same pre-

sumption prevails in favor of good faith, and the same rules of construction are uniformly applied in the courts.

One of the most familiar of these, is the quaint rule of Lord COKE: "Whensoever the words of a deed, or of the parties without deed, may have a double intendment, and one standeth with law and right, and the other is wrongful and against law, *the intendment that standeth with law shall be taken.*" (Coke's Litt., 42.)

The assignors, when they executed this instrument, were creating a trust for a lawful purpose, to be executed under the control of the courts, by an unobjectionable and competent trustee. They surrendered all their property, reserving to themselves no benefit or control in any contingency whatever. The general tenor of the instrument, as well as the finding of the jury, indicate an honest purpose to apply their property unconditionally to the payment of their debts. They had no apparent motive for delaying this application. If the clause in question could be construed as directing such delay it would defeat their manifest intent. There is no such express direction, and if one can be deduced by inference or implication, the effect will be to destroy the deed, and convert into a crime an act otherwise innocent. Deeply as the law abhors fraud and crime, it equally abhors the imputation of either, except upon clear and controlling evidence. Where mere words, written or spoken, are relied on as the sole evidence of guilt, it is not enough that they admit of a construction consistent with the imputed wrong, unless they are also inconsistent with a lawful act and an honest purpose. There are exceptions to this rule, in the class of cases in which, from considerations of public policy, particular facts are made by law presumptive evidence of fraud or crime. Familiar illustrations of these rules of artificial presumption are found in the old English law of child murder, and in our own statute, making the continued possession of assigned goods evidence of fraud in respect to the creditors of the assignor. The present case is within none of these exceptions; and the *onus* is, therefore, upon the creditor who assails the assignment, to show that the

clause in question is in plain violation of law. If he fails in this, the duty of the court is clear. The assignment, being otherwise unimpeached, must be upheld, unless it bears upon its face the brand of self-condemnation. In the case of the Earl of Clanrickards, Lord HOBART said: "I do exceedingly commend the judges that are curious and almost subtile, *astuti*—which is the word used in the Proverbs of Solomon in a good sense, when it is to a good end—to invent reasons and means to make acts, according to the just intent of the parties, and to avoid wrong and injury, which by rigid rules might be wrought out of the act." (Hobart, 277.) Whenever this rule of judgment has been invoked, it has received the sanction of the courts. (*Crossing* v. *Scudamore*, 1 Ventris, 141; *Roe* v. *Tranmer*, 2 Wilson, 78; *Pugh* v. *The Duke of Leeds*, 2 Cowper, 714; *Harrington* v. *Kloprogge*, 2 Chitty, 475; *Shore* v. *Wilson*, 9 Clark & Finelly, 397; *Hathaway* v. *Power*, 6 Hill, 456; *Booth* v. *Sweezy*, 4 Selden, 280.) It may be said of this, as it was, by Lord BACON, of a kindred rule: "It is author of much quiet and certainty; and that, in two sorts: first, because it favoreth acts and conveyances executed, taking them still beneficially for the grantees and possessors; and, secondly, because it makes an end of many questions and doubts about construction of words; for, if the labor were only to pick out the intention of the parties, every judge would have a several sense; whereas this rule doth give them a sway, to take the law more certainly one way." (Bacon's Law Maxims, Reg. 3.)

In the decisions made by this court, this rule of construction has been uniformly applied; and no general assignment has been adjudged to be fraudulent on its face, where the language of the instrument admitted of an interpretation in harmony with settled principles of law. (*Kellog* v. *Slauson*, 1 Kern., 302; *Jessup* v. *Hulse*, 21 N. Y., 168; *Ogden* v. *Peters*, 21 N. Y., 24; *Griffin* v. *Marquadt*, 21 N. Y., 123; *Campbell* v. *Woodworth*, 24 N. Y., 304; *Dow* v. *Platner*, 16 N. Y., 562; *Carpenter* v. *Underwood*, 19 N. Y., 520; *Oliver Lee's Bank* v. *Talcott*, 19 N. Y., 146.) The cases in which the trust has been subverted as illegal, have

been those in which the assignee was invested by the instrument with absolute or discretionary powers, independent of, and inconsistent with, those resulting from the nature of the trust by operation of law. (*Barney* v. *Griffin*, 2 Comst., 365; *Nicholson* v. *Leavitt*, 2 Seld., 510; *Burdick* v. *Post*, 2 Seld., 522; *Porter* v. *Williams*, 5 Seld., 142; *Brigham* v. *Tillinghast*, 3 Kern., 215; *Dunham* v. *Waterman*, 17 N. Y., 9; *Nichols* v. *McEwen*, 17 N. Y., 22.)

The provisions of the assignment now in question, if fairly construed, are free from all objection. The obvious purpose of the clause to which exception is taken, was to enjoin fidelity on the assignee, in exercising the powers conferred by the assignor, and in discharging the duties of the resulting trust. Such an injunction was needless; as the mere acceptance of the instrument, if the objectionable words had been omitted, would have imposed on the assignee the precise obligations to the creditors, which this clause declared in terms. He was directed to convert the assigned estate into money with all convenient speed; and this would have been his plain duty, though it had not been enjoined by the assignor. That such a direction does not invalidate the instrument was adjudged, by this court, in the case of *Ogden* v. *Peters* (21 N. Y., 23).

He was also enjoined to sell and dispose of the assigned property, " at such *time or times*, and in such *manner*, as to him may seem most for the benefit and advantage of the creditors." These, too, were obligations imposed by law, and which he would not have been at liberty to disregard, though they had not been stated in the declaration of trust. If he had sold all the property at once, without regard to its locality, its nature, or the circumstances which might require sales at different places, and on different occasions, he would have been guilty of a plain breach of trust. If the beneficiaries were seasonably advised that such a course was meditated, they could arrest his action by invoking the aid of the courts; and if the wrong was perpetrated without notice to them, they could hold him responsible for bad faith in the execution of his trust. So, also, as to the *manner* of sale. Whether the

property should be sold at private sale or at public auction, was a question committed by the law, as well as by the assignment to the discretion of the assignee. That the discretion as to the time or times and manner of sale does not invalidate the assignment, was adjudged in the case of *Jessup* v. *Hulse* (21 N. Y., 168).

The remaining objection arises out of the direction, that the assignee should exercise his *discretion* in these particulars in good faith, as to him should "seem to be most for the benefit and advantage of the creditors." It would be difficult to define, with more exact precision, the duty in this regard imposed by law on the trustee. The question, however, is no longer open to discussion; as the validity of such a direction has been settled in this court by repeated adjudications. (*Kellog* v. *Slauson*, 1 Kern., 302; *Jessup* v. *Hulse*, 21 N. Y., 168; *Wilson* v. *Robertson*, 21 id., 587.)

We find nothing in the assignment indicative of a purpose on the part of the assignor, to withhold any portion of his property from his creditors, to delay its prompt application to the payment of his debts, to invest his assignee with unlawful powers, or to hamper him with illegal restrictions. If he was guilty of any fault, it was in enjoining upon the assignee that fidelity to his trust, which was secured by the more authoritative mandate of the law. Such an injunction is neither immoral, illegal nor fraudulent. It is never unlawful to *stipulate* for that, which is *implied* as matter of undoubted legal right. "*Expressio eorum quae tacite insunt nihil operatur.*" (Broom's Legal Maxims, 518; *Curtis* v. *Leavitt*, 15 N. Y., 120.)

As the original assignment was valid, it is unnecessary to consider the question, discussed with great learning and ability by the respective counsel, whether an assignment can be purged by subsequent agreement between the parties, from an unlawful provision in favor of the assignee, as against a creditor who acquires his equitable lien after the illegal provision is waived.

Various interlocutory errors are alleged, in the course of the proceedings which resulted in the exoneration of the

assignor by the jury, from the imputation of actual fraud. The clearness and cogency with which these allegations are met, in the opinion delivered by Judge Woodruff at the General Term, relieve us from the duty of considering them anew in detail. It is sufficient to say that the views presented by him meet with our entire concurrence.

The judgment of the Superior Court should be affirmed.

Brown, J., also delivered an opinion in favor of affirmance.

All the judges concurring; the judgment was affirmed, with costs.