Seldeh, J.
 

 The question presented by this case is, whether a general assignment for the benefit of creditors, is void upon its face, because it contains the following clause, viz.: “ To sell, dispose of and convey the said real estate and personal property, at such time or times, and in such manner, as shall be most conducive to the interests of the creditors of the said party of the first part, and convert the same into money, as soon as may be consistent with the interests of said creditors.”
 

 
 *169
 
 The principles governing this class of instruments have been so clearly and definitely settled by a series of decisions, in the courts of this State, that very little is left to be determined in regard to them. Although they tend, in almost every case, to some extent, to hinder and delay particular creditors in the prosecution of their legal remedies, they are nevertheless sustained, when made by tin insolvent debtor, where no unnecessary delay is produced. But it has been repeatedly held, that as creditors who havé obtained judgment have both a legal and equitable right to have the property of their debtor immediately appropriated to the satisfaction of their demands, if the debtor assigns, he can authorize no delay in any form except such as is necessarily and unavoidably incident to such a trust. The assignee is a sort of substitute for the officers of the law, and must be left to act under the obligations and responsibilities which the law imposes. The assignor can neither prescribe conditions, nor invest the assignee with powers, which tend in any degree to vary or modify the duties which the law devolves upon him. Beyond investing the assignee with the legal title, and directing the order in which the proceeds shall be applied, the debtor can exercise no control whatever over the assigned property. Any clause in the assignment, therefore, which could legitimately be set up by the assignee as a justification for a course of conduct, in regard to the assigned property, in any respect different from that which the law would dictate, of necessity vitiates the assignment.
 

 It has, however, never been held, that a provision in mere affirmance of the legal obligations of the assignee—authorizing him in terms to do precisely what the law, if the assignment was silent on the subject, would require him to do—would affect the validity of the instrument. As the agent or officer of the law, the assignee is necessarily invested with some discretionary power. He cannot sell instanter, but is bound to exercise reasonable care and prudence in regard to the time and circumstances of the sale. He may take time to advertise, and must therefore select the day when the sale is to take place.. If no bidders should attend upon the day appointed, he would have
 
 *170
 
 power, and it would be his duty, to postpone the sale to another day. He would be obliged also, to determine whether the property should be sold in separate parcels, or all in one parcel, and to exercise, in thatand other similar respects, some discretion as to the manner and circumstances of the sale. In all these arrangements, he would be bound to consult the interests of the creditors, and would have no right to defer the sale longer than these interests might be supposed imperatively to require.
 

 How the question in this case is, whether the clause objected to goes beyond a mere affirmance of these plain legal obligations. The law, as we have seen, would require the assignee to make such arrangements in regard to the manner of the sale as would seem best calculated to promote the interests of the
 
 creditors;
 
 and to sell the property, and convert it into money, without any unnecessary delay.
 

 This is precisely what is required by the terms of this assignment. The assignee is virtually directed to perform his duty according to the rules and requirements of the law. If the clause in question purported in terms'to invest the assignee with any discretion, as coming directly from the assignor him'self, it would be fatal to the assignment; as if it had authorized the assignee to dispose of the property at such time and in such manner as
 
 in Ms judgment
 
 would be most conducive to the interests of the creditors, or as he should deem expedient and best calculated to promote their interests.
 

 The difference between a discretion conferred by an assignor, as a power accompanying the transfer of the title, and that discretion which results
 
 ex necessitate
 
 from the duty which the assignee has to perform, is obvious. The assignor, being the absolute owner- of the property, and in no manner obliged to assign, may annex such conditions and qualifications to the transfer as he pleases.
 

 If he annex an improper condition, the court must pronounce the assignment itself void. It cannot hold the transfer good; and disregard the condition; because that would be to take the property from the assignor against his will. He having eon
 
 *171
 
 sented to part with his title only upon certain conditions, the transfer and the condition must stand or fall together, If, therefore, the court upholds the assignment, it must of necessity protect and enforce the terms and conditions upon which it is made. It cannot substitute its own discretion for that with which the assignor has in express terms invested the assignee. The discretion of the latter, in such a case, would be absolute and beyond the control of the court, if honestly exercised. Any bad faith on the part of the assignee would of course justify judicial interposition, but nothing short of it. The control which courts of equity have over trusts, must be exercised with due regard to the terms of the instrument by which the trust is created. Under a provision, therefore, which expressly gives .to the assignor a discretion as to time, the sale of the property might be indefinitely delayed, so long as the assignee might deem it expedient to wait for better prices; and hence the effect of such a provision in subverting the assignment. Ón the other hand, that discretion which is unavoidably incident to the trust reposed in the assignee, is entirely subordinate to the judicial power, and any error of judgment on the part of the assignee, in its exercise, could be at once corrected by an application to the court.
 

 All the cases involving this question which have heretofore arisen in this State have been decided in accordance with these views. An assignment authorizing the assignees to convert the property into money “ within such convenient time as
 
 to them
 
 should seem meet” was held void upon its face in the casé of
 
 Woodburn
 
 v.
 
 Mosher
 
 (9 Barb., 255). So in
 
 Murphy
 
 v.
 
 Bell
 
 (8 How. Pr., 468), where the assignees were directed to convert the assigned estate into money, “within such convenient time as to them shall seem meet and as shall be most conducive to the interests of all parties concerned,” the assignment was in like manner condemned. Both these cases are cited with approbation by this court in the case of
 
 Brigham
 
 v.
 
 Tillinghast
 
 (3 Kern., 215). In
 
 Kellogg
 
 v.
 
 Slauson
 
 (1 Kern., 302), the authority given to the assignees was to sell and dispose of the property, upon such terms and conditions as in their judgment may
 
 *172
 
 appear best and most for the interest of the parties concerned; and this court sustained the assignment upon the ground that the phrase “ terms and conditions ” related exclusively to the manner of conducting the sale; but the court said, that if .the discretion vested in the assignees had extended to the time of sale, it would have been fatal to the assignment. A discretion as to the time for distributing the proceeds of the assigned property has also been held to avoid the assignment.
 
 L'Ivernois
 
 v.
 
 Leavitt
 
 (23 Barb., 63). There the assignees were authoriized to distribute the funds realized under the assignment, among the general creditors, “at such reasonable time or times as they in their discretion might think p/aper.” In each of these cases it will be seen that the assignment contained language expressly authorizing the assignees to determine when the proper time for action had arrived. The property was to be sold, or the proceeds distributed, not at such time as the law would dictate, but when it should
 
 in tile judgment of the assignees
 
 be expedient. The assignment in the present case contains no such language. It requires, it is true, that the interests of the creditors shall be consulted in fixing the time; but it does not say that the assignee shall be the judge of those interests. Whatever discretion is vested in the assignee here, he derives not from the terms of the assignment, but from the law; and it is this which distinguishes the present case from all those in which the assignment has been condemned. The legal effect of this assignment is in no respect different from what it. would be if its language had been that the assignee should sell immediately, or at such time or times as his duty would require. ■
 

 The rule on this subject is, as this court has before said, that all that an insolvent debtor who makes a voluntary assignment for the benefit of his creditors can properly do is, to authorize a sale of the property, and direct the order in which the proceeds shall be applied. . In the present case the assignee has done no more than this.'
 

 The phrases objected to are wholly superfluous and without the slightest effect upon the construction of the assignment.
 
 *173
 
 The rule that “ mere surplusage does not vitiate," is as applicable to such an instrument as to a judicial pleading. The judgment should I think be reversed, and there should be a new trial with costs to abide the event.
 

 All the judges concurred ; Bacon, J., delivering an opinion to the same effect and upon some other points in the case which were not determined by the court.
 

 Judgment reversed, and new trial ordered.