## RAPALEE *v.* STEWART *et al.*

A creditor who, with knowledge of an assignment by his debtor fraudulent in law, upon its face, enters into an agreement with his debtor and the trustees named in the assignment for the management of the trust property and the distribution of its proceeds in accordance with the terms of the assignment — the performance of such agreement having been entered upon — is precluded from impeaching the assignment for such patent defect.

Such agreement constitutes a good defence, and as such new matter is not available without being pleaded, an intermediate order striking it out of the answer involves the merits, and is reviewable upon .an appeal .from the final judgment in the action.

A provision that the trust property "be converted into cash, or otherwise disposed of to the best advantage" by the assignee, is authority to sell ·on credit, and avoids the assignment.

Rapalee v. Stewart.

APPEAL from the Supreme Court. The facts are sufficiently stated in the following opinions.

*Sanford E. Church*, for the appellant.

*John K. Porter*, for the respondent.

MARVIN, J. Action by plaintiff, a judgment creditor of the defendants, Stewart & Tunnicliff, to set aside an assignment made by the debtors to the other defendants, Morgan & Smith. The assignment is attacked for fraud appearing in it, and for frauds not so appearing. The assignment bears date October 21, 1850. This action was commenced in January, 1853, upon a judgment recovered October 1, 1852. The defendants, among other things, denied that there is any sum justly, equitably and actually due to the plaintiff upon the judgment, because they say that Stewart & Tunnicliff, October 21, 1850, made a general assignment of, &c., for the benefit of their creditors, to the other defendants, and that the plaintiff was one of a class of creditors preferred, whose debts amounted to more than $30,000, and that the plaintiff, knowing the facts, about December 21, 1850, entered into a written contract with the debtors and others, creditors, some of whom were of the same class of preferred creditors, the contract being dated November 13, 1850. The contract is fully set out, and its substance, after reciting that S. & T. had made an assignment, and that their statement shows a large amount of property, consisting of real estate, canal boats, &c., and expressing the belief that a settlement of said estate in the ordinary way by the assignees would result in a great sacrifice of property, alike injurious to the interest of debtors and creditors, and also reciting that the New York creditors, who were not to be paid under the assignment, until after the parties to the agreement were paid had named B. W. Franklin and Spencer Booth, with Nelson Tunnicliff, one of the debtor firm, to act in conjunction with the assignees, in converting and disposing of the property to pay the creditors, in the order of preference mentioned in the assignment; the parties to the agreement consented and agreed

that the assignees, Tunnicliff, Franklin and Booth, should con-. vert and dispose of the property to pay the creditors in the order of preference mentioned in the assignment, and to compromise with any or all of the creditors who might be preferred in the assignment, before the parties to the agreement, in such manner and on such terms as Morgan, Smith, Franklin and Booth should deem for the interest of all parties; and when the property should be disposed of and the proceeds fully paid to the parties to the agreement, to be in full of their claims against the firm. It was averred that Morgan, Smith, Tunnicliff, Franklin and Booth accepted and entered upon the trust.

Upon motion, at a special term, all this was stricken out, except the denial that there was anything equitably due upon the judgment, and such order was affirmed, on appeal to the general term.

An order was made, with the consent of the parties, that the action be referred to Charles G. Judd, to take and state the accounts of the assignees, and to take testimony in the action, but not to decide the case. The referee made a report of the testimony taken by him, and the exhibits proved. They are very voluminous, occupying between 800 and 900 folios. He did not state the account as directed.

The cause was brought to argument at a special term, and the court found the judgment and execution and assignment as stated, and that the latter contained a power authorizing the assignees to dispose of the assigned property upon credit, if they could do so with more advantage to the parties interested. And that the assignees, when this action was commenced, had in their hands money enough, the proceeds of the assigned property, to pay the plaintiff's judgment and the costs of the action, and upon these findings adjudged the assignment fraudulent and void, as to the plaintiff, "because it authorized a sale upon credit;" and also that the assignees pay the plaintiff his judgment, with interest, besides the costs of the action. The defendants filed exceptions, and appealed to the general term, where the judgment was affirmed.

It thus appears that the Supreme Court have made two

"actual determinations" in this action, one, the order to strike out portions of the answer, and the other adjudging the assign ment void, as to the plaintiff, upon the ground, exclusively, that it contained a power authorizing the assignees to dispose of the assigned property upon credit, if they could do so with more advantage to the parties interested.

The defendants attack the order to strike out. The counsel for the respondents supposes that this question cannot be made in this court. He refers to one of the exceptions, filed after the trial, alleging an affirmance and ratification of the assignment by the plaintiff and others ; and alleges that such exception is unfounded in fact, and not available here. This is undoubtedly so. But the question here does not arise upon any exception. It arises upon an express provision of the Code, declaring that "upon an appeal from a judgment, the court may review any intermediate order involving the merits and necessarily affecting the judgment." (§ 329.)

If the facts, pleaded by the defendants, involved the merits and necessarily affected the judgment, the order striking them out, is reviewable by this court, upon this appeal from the judgment. And if the matter thus striken out would have constituted a good defence to the action, it involved the merits, and the striking it out necessarily affected the judgment, as such matter was not available to the defendants unless pleaded as "new matter." Would the new matter pleaded by the defendants, have constituted a good defence ?

The statute declares an assignment, made with intent to hinder, delay or defraud creditors, void, as to the persons so hindered, delayed or defrauded. (2 R. S., 137, § 1.) Why is such an assignment void ? It is because the effect of it is to delay or defeat creditors in the collection of their debts, and when made with such intent, it is void. But if the creditors consent to the assignment, how can it be said that they are defrauded ? One cannot predicate a fraud of facts having his assent, upon a full knowledge of them. There can be no fraud, when all the parties interested are equally informed of all the facts, and mutually assent to them. It is

true, in this case, the plaintiff was not consulted, at the time the assignment was made, but on being advised of its provisions, he acquiesced in them, and entered into an agreement with other creditors, showing an assent to and a ratification of the assignment; by which agreement the parties to it consented and agreed that certain other persons, one of them being the assignor debtor, should be joined with the assignees, and should convert and dispose of the property, and pay the creditors in the order of preference mentioned in the assignment. Here is not only a waiver of any right to attack the assignment for fraud, but a ratification of it, by coming in and taking action, by agreement with other creditors, designed to prevent a sacrifice of the assigned property, by a disposal of it in the ordinary way, by the assignees; and by the agreement authorizing further delays and compromises, &c., &c. It would be a fraud upon all the other creditors to this agreement, if the plaintiff should be permitted to maintain this action, and by setting aside the assignment, gain a preference above them and secure the payment of his entire debt. I think that the plaintiff was concluded, by his acts in reference to the assignment, from attacking it upon the ground of fraud as to creditors.

I think the case much stronger than *Hone* v. *Henriquez* (13 Wend., 240), decided by the unanimous vote of the Court for the Correction of Errors. In that case, Hone had assented to the assignment. He was an auctioneer, and some of the assigned goods had been placed in his hands by the assignee, for sale, and he had sold them; and as the assignment had been declared void, at the suit of other creditors, he claimed to hold the proceeds of the sales made by him, by virtue of a lien for the satisfaction of his debts. His claim was negatived, upon the ground that he was concluded by his assent to the assignment; that, as to him, he having assented to the assignment, it was not void, and he could not assert his lien as an auctioneer for the payment of the debt owing to him by the assignors.

If we should pass this question, arising upon the order, can

the judgment stand upon the ground upon which it is placed by the court?

The assignment was in trust, that the property assigned " be converted into cash, or otherwise disposed of to the best advantage, by the said party of the second part, to pay, first, the expenses of the trust hereby created, and the debts and demands mentioned and described in schedule A, hereto annexed, according to the directions and upon the conditions and contingencies stated in said schedule," and which are constituted the first class to be paid in full. This provision was construed as containing a power authorizing the assignees to sell the property on credit, and for this sole reason the assignment was declared void, as to creditors.

The language is, "to be converted into cash, or otherwise disposed of to the best advantage," &c., to pay expenses and these debts. It is a cardinal rule of construction, to ascertain the intention of parties to written instruments. Another rule is, that if an instrument may fairly be construed in two ways, one of which will invalidate it and the other make it valid, the latter construction is to be adopted. The law does not suppose that parties intend to make an illegal and inoperative instrument or contract. The statute condemns sales and assignments made with intent to hinder or delay creditors. A voluntary assignment for the benefit of creditors may, and generally does, occasion some hindrance to, and delay of, the creditor; yet they are upheld, if no hindrance or delay, other than such as is incident to a faithful execution of the legal trust, is interposed. The debtor must not require or authorize delay.

An authority to sell the assigned property upon a credit, is an authorization of delay, and renders the assignment void. Is such authority expressed, or does it appear by necessary implication, in the assignment in this case? The debtors say to the assignees: Convert the property into cash, or otherwise dispose of it to the best advantage, to pay expenses and debts. Here is authority to dispose of the property otherwise than for cash, or otherwise than by converting it into cash; and the

authority is broad and general, the only limitation being, that it shall be "to the best advantage," to pay expenses and debts. Who is to judge what disposition will be to the best advantage? It must be the assignees. The discretion is conferred upon them of converting the property into cash, or of disposing of it in some other way which, in their judgment, will be more advantageous. This is a discretion not controllable by the law relating to the general duties of trustees in such cases. In *Jessup* v. *Hulse* (21 N. Y., 168), the authority was, "to sell, dispose of, and convey," &c., "at such time or times, and in such manner, as shall be most conducive to the interests of the creditors," &c., "and convert the same into money as soon as may be consistent with the interests of said creditors." This language was construed as not vesting in the assignee an absolute discretion, but as only stating, unnecessarily, what the law would give him, subject to the control of the courts. Judge SELDEN says: "The assignee is virtually directed to perform his duty, according to the rules and requirements of the law." He adds: "If the clause in question purported, in terms, to invest the assignee with any discretion, as coming directly from the assignor himself, it would be fatal to the assignment; as, if it had authorized the assignee to dispose of the property at such time and in such manner as, in his judgment, would be most conducive to the interests of the creditors, or as he should deem expedient and best calculated to promote their interests." I think that kind of discretion here condemned, is found in the present case, viz., to dispose of the property, otherwise than for cash, to the best advantage. The power of disposition is express, limited only in its exercise, to the best advantage; and as to what kind of disposition will be to the best advantage, is left, necessarily, to the judgment and discretion of the assignees. The assignees are not required to convert the property into money, eventually. They may, under the power, for aught I see, sell the real estate on long credit, and take bonds and mortgages, believing that they can use them, in paying debts, to the best advantage; and all this might turn

out so.   But the law does not sanction such a trust, in a vol-untary assignment to pay creditors.

In *Woodburn* v. *Mosher* (9 Barb., 255), the authority to the assignees was to convert the property into money "within such convenient time as *to them* should seem best." Here the convenient time of conversion into money was left to the discretion of the assignees.   It was a discretion not controllable by the court.   It was held that the assignment was void upon its face.

In *Kellogg* v. *Slauson* (1 Kern., 302), the trust was to sell and dispose of the property "upon such terms and conditions as, in their (assignees) judgment, may appear best and wisest for the interests of the parties concerned, and convert the same into money."   This was construed as not conferring authority to sell on credit; that the language was consistent with an interpretation making the assignment legal and valid.   The words " terms and conditions " were construed and limited to the manner of selling and disposing, as at public or private sales, in large or small quantities, &c.   A broader construction, authorizing a sale on credit, it was said, would equally author-any and every illegal act, such as disposing of the pro-y by lottery or at a raffle; that such construction was not c  'd for.   It may be remarked, in that case the property was to ᴗᴗ converted into money.   In the case under consideration I do not think we can limit the words " otherwise dispose of to the best advantage," to the manner of the sale or disposition intended to produce money.   Here the words are used in contradistinction to the words " converted into cash," thus confering an express authority to dispose of the property in a way not producing cash, and this authority is general, limited only by the judgment of the assignees, whether such disposition, otherwise than for cash, will be to the best advantage.   The argument that this power and discretion may find sufficient scope in making use of the property, by arranging with preferred creditors to take it in payment of debts, and that it may be so limited, is not satisfactory.

Upon the whole, I think the judgment of the Supreme Court

upon this question, was right, and the judgment should be affirmed, but for the erroneous order; and for this cause I think the judgment and the order must be reversed.

DENIO, Ch. J., DAVIES, ROSEKRANS and BALCOM, Js., concurred.

EMOTT, J. (dissenting).    The assignment before us contains a clause to this effect, that all the assigned property is "to be converted into cash or otherwise disposed of to the best advantage by the party of the second part, to pay, first, the expenses of the trust created, and the debts and demands mentioned or described" in certain schedules annexed to the instrument. In the decision pronounced at the trial, as well as in the opinions delivered, both at the special and general term, it was held that this clause conferred a power to sell the assigned property on credit, and the assignment was declared to hinder and delay creditors, because it contained this clause.

In the two leading cases of *Nicholson* v. *Leavitt* and *Burdick* v. *Post* (2 Seld., 510, 522), it was decided that an assignment for the benefit of creditors is void, if it authorizes a sale of the assigned property upon credit.    Since these decisions there has been, of course, no dispute but that authority to allow credit upon the sale of the assigned property will be fatal to an assignment by an insolvent debtor.    The questions which have been agitated in the subsequent cases, have been questions of construction, whether the terms of the particular instruments in question conferred or imparted such an authority.    In *Brigham* v. *Tillinghast* (3 Kern., 215), the assignment directed the assignees to convert the property, as soon as practicable and expedient for the best interests of all concerned, into cash or available means.    It was decided that available means must be understood to be credits, and, therefore, this was an authority to sell on credit.    Probably, but for this clause, that assignment might have been sustained upon the distinction which was adopted by this court in *Jessup* v. *Hulse* (21 N. Y., 168), that a direction to the assignees to convert the property into cash as soon as was expedient for the interests of the parties,

was valid, although had it been to make such a conversion as soon as they thought it would be expedient for such interests, it would be fatal. On the other hand, in *Kellogg* v. *Slauson* (1 Kern., 302), the assignees were authorized and directed to dispose of the property upon such terms and conditions as, in their judgment, might be best for the parties, and to convert the same into money. Here the assignment was sustained upon the ground that the discretion conferred upon the assignees was restricted to, or, at least, would be satisfied by, regulating the manner of selling, whether in public or private, in bulk or in small quantities. If the discretion given by that deed had extended to the time either of sales or of payments, the deed could not have been sustained even by the distinction afterwards taken in *Jessup* v. *Hulse.* The assignees were to act in the matters left to their discretion as they should judge best for the parties interested, and not as should be the best for their interests. The case of *Jessup* v. *Hulse*, which is reported in the Supreme Court (29 Barb., 539), and in this court (21 N. Y., 168), was this: The assignee was directed to sell and convey the property at such time and in such manner as should be most conducive to the interests of the creditors of the assignor, and to convert the same into money as soon as might be consistent with the interests of said creditors. The Supreme Court holding that this language authorized the assignees to delay selling the property, or to delay the time of payment for it, until a time should arrive which they might consider best for that purpose, supposed that it came within the scope of the decisions against assignments authorizing sales upon credit, and pronounced against it. This decision was reversed in this court with singular unanimity. The reason given for the reversal was that the clause in question was, in effect, surplusage. Judge SELDEN said, in delivering the opinion of the court: "If the clause in question purported, in terms, to invest the assignee with any discretion, as coming directly from the assignor himself, it would be fatal to the assignment, as if it had authorized the assignee to dispose of the property at such time and in such manner as, *in his judg-*

*ment*, would be most conducive to the interests of the creditors, or as he should deem expedient and best calculated to promote these interests." And he subsequently observes : "The assignment in the present case contains no such language. It requires, it is true, that the interests of the creditors should be consulted in fixing the time, but it does not say that the assignee shall be the judge of those interests. Whatever discretion is vested in the assignee here, he derives, not from the terms of the assignment, but from the law, and it is this which distinguishes the present case from all those in which the assignment has been condemned. The legal effect of this assignment is in no respect different from what it would be, if its language had been that the assignee should sell immediately, or at such time or times as his duty would require."

The principles deducible from all the authorities upon these questions have been frequently stated. An insolvent debtor who makes a voluntary assignment, must devote his property absolutely and unconditionally to the payment of his debts. He may direct the order of the application, or of the payment of these debts, and he may select the agent by whom the application is to be made; but his power goes no further. He can neither direct nor authorize any delay in selling his property, or in collecting the proceeds of such sales, or in distributing such proceeds among his creditors; and an authority to his assignees to do either of these things is as objectionable as a direction to a like effect. But an authority to do an act or to exercise discretion, which results necessarily from the duty of the assignee, or which is incident to his trust, is nothing more than an affirmance of his legal authority and obligation, and will not affect the assignment.

The question, in the present case, is not, whether the discretion conferred upon the assignee is to be exercised upon his own judgment, or by that of the law. According to the case of *Jessup* v. *Hulse*, the authority to convert the property into cash, or otherwise dispose of it to the best advantage, may be admitted to mean that he is to do the one or the other, if these expressions signify different things, as may be in law or

in fact, and not in his judgment, to the best advantage. But the question then is, whether to dispose of the assignor's property otherwise than by converting it into cash, is a disposition which the law will permit, and whether the power to make such a disposal of assigned property, is an authority which the assignors had a right to confer. In other words, whether disposing of the assigned property otherwise than by converting it into cash, will hinder, delay or defraud the creditors of the assignor. It seems to me that the bare statement of the question carries with it the answer. All that a failing debtor can do, or authorize to be done, with his property, is to convert it into money, into cash, and to apply it to pay his debts. To dispose of it otherwise, is simply to do something else with it than what the law permits. This language, if it occurred in an instrument where such a power would be legal, might well be claimed to authorize a mortgage or a lease, or any disposition of the property referred to, which, in the judgment of the law or the parties, would be most for the advantage of those interested. It is not an authority to sell the property and convert it into money, at such time or in such a way as may be for the interest of the creditors, but it is an authority to convert it into money or make such other disposition as may be for such interests. It is not an authority to do a lawful act, with a discretion as to time or manner, conferred and controlled by law, but it is a power to do a lawful act, or one wholly unlawful, in the discretion of the assignees, whatever may be the rule or the guide of that discretion.

The answer which is attempted to this is, that the interests of the creditors do not require nor permit any other disposition of the assigned property than its conversion into cash; and as the action of the assignees is to be controlled by legal discretion, and not their own judgment, this clause imports nothing more than the alternative authority to convert into money. The judgment of this court in *Jessup* v. *Hulse* is invoked to sustain this construction. But it cannot be pressed into such a service. An authority to do an illegal act is not to be sustained or overlooked, because it may or may not be

exercised; and the law to whose discretion its exercise is referred, would hold that such exercise would be contrary to the interests which are to be consulted. The argument is, that although the assignees are authorized to do what they have no right to do, yet they are authorized to do so only if it be for the best advantage of the creditors; and that, as the law will not decree an illegal act to be for their advantage, therefore the trustees are not authorized to do it at all. I have already said, that an authority to do what the law forbids, is as fatal as a direction to do it. The law exercises no discretion or control over illegal acts. When power is conferred to do what is legal and permissible, but the time and mode of acting is left to be determined by an exercise of discretion, we are to infer that it is intended to leave the decision to the law's discretion, and not to place the wishes or opinions of the parties above the law, unless this is positively stated. But we have no right to say, that where power is given to do either a legal or an illegal act, the latter authority is nugatory, because the discretion to do the one or the other will be controlled by the rules of law, and these will forbid the violation of the rights of creditors. Upon such a principle, it would be difficult to condemn an assignment for anything which it might contain, of a permissive character merely.

I am unable to see how we can come to any other result, than that which was reached by the court below, upon this point, and as this is decisive against the validity of the assignment, it is unnecessary to consider any other question arising upon that instrument. There are one or two minor questions which must be adverted to. It is said that it was erroneous for the court to proceed with the trial of the cause, upon the testimony taken and reported by the referee, until he had executed the residue of the order of reference, and stated the accounts of the assignees. It was, however, entirely a matter of discretion with the court to do so or not, and we cannot review their decision in such a particular. It is also objected, that the court had no right to order payment of the plaintiff's claim, without going through with an accounting, if not appointing

Rapalee *v.* Stewart.

a receiver. The answer to this objection is, that the answer admits the possession of assets by the assignees, claiming to retain the same until the issue of a litigation between certain preferred creditors as to priority in payment; and the judge found as a fact, upon the evidence, that the assignees had in their hands sufficient to pay the plaintiffs. We must take this, fact to be as found, and cannot review the decision establishing it. Upon such a state of facts, the court had the right to order the plaintiff's judgment paid, and there was no reason why he should be compelled. to go through an accounting by the defendants, or to submit to the appointment of a receiver.

The defendants also complain of an order, striking out a part of their answer. It may, in some cases, be the duty of this court to review such orders. They may deprive a party of his defence, and thus involve the merits and affect if not produce the judgment. But the matter stricken out in this case was irrelevant, in the aspect in which it was pleaded. It did not prove that there was nothing due upon the judgment. It was evidence to establish, if anything, the ratification of the assignment by the plaintiff. But it was not pleaded in that connection or for that purpose. Besides, the allegation did not go far enough to conclude the plaintiff. All that was alleged was, that he had signed a paper, agreeing that five persons, of whom the assignors and one of the assignees were three, might dispose of the assigned property in a certain way, not the way pointed out in the assignment, and that upon receiving his share of the proceeds, he would release the assignees from their debt, thus, it is said, recognizing the fact of the assignment. · It was not alleged that any money had been paid to or received by the plaintiff, under this agreement; and I do not see how he was estopped or concluded, by the mere execution of the paper, from attacking the assignment for fraud. At all events, the execution of such a paper neither satisfied the plaintiff's judgment nor went to show it paid. At the trial, there was no offer or attempt to prove these facts in any other connection or for any other purpose. The only testimony concerning them, indeed, is contained in

. the record of the plaintiff's judgment, which was read in evidence. In this, it appears that this agreement was pleaded as a defence to the plaintiff's claim, and the defence overruled. The order striking out the allegations of the answer, to which I have adverted, was correctly made, as a question of pleading, and no question of the effect of the evidence in any other aspect is before us. The judgment of the Supreme Court should be affirmed, with costs.

WRIGHT, J., concurred in this opinion. SELDEN, J., did not sit in the case.

> Judgment and order reversed,
> and new trial ordered.