Beach, J.
—The bill prays a decree, setting aside the general assignment of certain of the defendants who constituted the firm of Hals ted, Haines & Co., as having been made with intent to hinder, delay and defraud creditors. The instrument included the individual assets of each partner. Various facts are claimed proven, and to warrant this conclusion, which will be separately considered.
There are numerous adjudications in cases of like character, but, beyond the statement of some familiar general principles, they are useless as precedents, because the facts in each case differ from those in all others. The leading requirement for granting "the relief asked is proof sufficient to show an intent to hinder, delay or defraud creditors, which must be found as a fact.
The assignment gives preference to the estate of *201 William M. Halsted, father of one of the assignors, claimed to be in part a secret reservation for the partner of that name. I do not think the facts justify such a conclusion.
William M. Halsted was one of Ms father’s heirs, and interested in the estate to the extent of one-fourtli. There is no doubt that the firm actually owed the preferred debt, and there is no reason why it should not have been preferred. It appears Robert Halsted, an heir, had the distribution of the estate assets, although in what capacity or under what arrangement is not shown. The'money on deposit with the insolvent firm was to the credit of the estate, and undivided between those ultimately entitled. It is questionable whether or not under such circumstances the undetermined and indefinite sum which might come to William M. Halsted upon a division, would be by preference of the gross amount, a secret or fraudulent reservation for himself.
The firm owing the debt could legally prefer it That ultimately one of the partners might receive a portion, does not of itself show fraudulent in ten'. But the assignment covered the individual assets of William M. Halsted, and he could not possibly leeeive any benefit, because Ms interest, if any, in his father’s estate, passed to the assignee.
Another fact bears upon this question, William , Halsted, in September, 1883, borrowed from his brother Robert, on the firm’s account, certain securities worth 822.400. To secure this loan, and other indebtedness of the firm, he executed a deed to Robert of his .interest in certain lands belonging to his father's estate. In addition, he testifies to having verbally transferred to his brother his entire interest in the estate. The brother so testifies in substance. This testimony was given by laymen, unacquainted with legal phraseology, and probably not versed in precise *202 expression. Its lack of precision should not provoke harsh criricism, or affect the judgment of the court, if its truth is apparent. It is not always that glibness and exactitude accord with verity; pure invention is often detailed with wondrous facility. Neither is an unblemished mercantile career to be without influence in passing upon the truth of testimony, else upright dealing, commercial integrity and position are useless when most needed, in time of financial misfortune.
I am of opinion that prior to the assignment, William M. Halsted’s interest in his father’s estate had passed from Mm as security for loans made on account of his firm. When the loans were paid, title to the security given passed from the holder to the assignee, and transfer may be compelled. While a fraudulent intent is to be inferred from action necessarily culminating in a fraud upon the rights of creditors, the inference should not be drawn unless the result is clearly deducible. What possible personal benefit can come to William M. Halsted when his title to any possible share is transferred to the assignee, I cannot conceive.
The argument on plaintiffs’ behalf that there was no “ estate of the elder Halsted,” the account being so headed, is faulty and technical. The books show an account under that name, and the evidence of Robert Halsted is that the funds were drawn out and divided by him when he deemed advisable. Practically there was an estate account, which could not be correctly called an individual one of Williám M. Halsted, or of any other heir ultimately entitled to an uncertain portion.
The omission of this interest from the individual schedules does not warrant an inference of fraudulent intent." The assignor testified it had passed from him to Robert, and such was the fact in my opinion. It not, there is evidence showing decided action, warrant *203 ing honest belief in William M. Hals ted of having so transferred his interest, which would preclude a conclusion that Ms schedules were a legal representation to creditors consciously and purposely false (Shultz v. Hoagland, 85 N. Y. 464).
These views are applicable to questions arising from the position of John K. Myers, another partner.
Ingenious and strong argument is urged, on plaint» iffs’ behalf, from some debts preferred! in the assignment being in excess of their true amount. These errors are shown to have resulted from their ignorance or innocent error. The sums were taken from the firm books, but were incorrectly entered for the causes stated. There is no proof that the increase was by design or intentional.
But the fact of itself is claimed to render the assignment fraudulent and void. This 1 think erroneous. The preference for a larger sum than is due the creditors is a fact requiring a like supplement, as any other circumstance claimed to invalidate the instrument, i. e., a fraudulent intent. This in no way compels creditors to see the insolvent estate given away by excessive preferences without legal remedy. In such a case the filing of a bill to set aside the assignment is still the remedy to correct the evil. The court says in Matter of Finck, 10 Daly, 100, speaking of a preferred debts i6If the claim is a fraudulent one, and they (the creditors) desire to prevent or avoid its payment, they cannot come in under the assignment and avoid it, but must file their bill to set aside the assignment.”
The case at bar is not within those adjudications holding that the preference of an unfounded or fictitious claim will avoid the assignment as fraudulent.
It is the duty of an assignee to distribute the trust estate in accordance with the directions of the assignment. But this principle does not impose upon him *204 the obligation to pay a preferred debt he knows or believes to be wholly fictitious, or partly in excess of its true amount. An assignee is without authority outside the terms of the instrument appointing him, and the control of the court over his actions is likewise limited; but still he has duties to perform within this boundary line, including, at least, the right upon his own motion to investigate the correctness of sums directed to be paid preferred creditors. The principal of strict adherence to provisions in this regard contained in an assignment has never been adjudicated to prevent the correction of innocent error or manifest fraud (Kavanagh v. Beckwith, 44 Barb. 192). While an excessive preference without explanation would invalidate an assignment, the ear of the court is not shut to facts which may establish honest mistake.
The case of Jessup v. Hulse, 21 N. Y. 168, does not conflict with these views. The quotation by plaintiffs’ counsel, that “any clause in the assignment therefore which could be legitimately set up by the assignee as a,justification for the course of conduct in regard to the assigned property in any respect different from that which the law would dictate, would of necessity vitiate the assignment,” refers to directions intentionally inserted, and productive of action by the assignee in contravention of law. This mantle is not broad enough to include errors, which the assignee should correct rather than perpetuate. The case of DeCamp v. Marshall, 2 Abb. Pr. N. S. 373, also quoted from, decides that an assignment directing a larger payment to a creditor than is due him, is void, but refers to an unexplained direction, for the learned judge limits its application by the statement: “I do not say that no explanation may be given of acts like those referred to, to rebut actual fraud.” In Jacobs v. Remsen, 36 N. Y. 668, it was held a proper question for a jury, whether or not any portion of the preferences were *205 fictitious. These cases uphold the right of explanation, and certainly an honest mistake, if shown to a jury’s satisfaction, would be a good one.
I have examined the other propositions argued by plaintiffs’ counsel, and cannot give to them the effect urged. The transfer of the Haines account on the firm books from the debit of Mary A. to that of John P. is shown to have replaced it in its original position, and there is no evidence of the act having been fraudulent or productive of any ill effect. The same remark applies to the Wickham account. The remaining objections do not seem of sufficient importance for detailed reference.
A decree is ordered, dismissing the complaint, with costs.