Van Vorst, J.
This is a judgment creditor’s action, in which, it is sought to impeach as fraudulent and void, as *212 against creditors, a voluntary assignment made by the judgment debtors, of all their property and effects, and which assigned property and estate the plaintiffs seek to reach in the hands of the assignee, and to have the same through a receiver appointed by the court, applied to the satisfaction of their judgment.
Upon the trial the defendants moved to dismiss the complaint upon the following grounds:
First. That the execution upon the judgment had not been returned when this action was brought.
Second. That the plaintiffs had acquiesced in and adopted the assignment, and were precluded by such conduct from maintaining an action to impeach it.
The judgment was recovered on the 26th day of November, 1884, for $21,603.95, and on the same day an execution was issued thereon to the sheriff of the county of New York, returnable within sixty days. The deputy sheriff, Young, who had the charge of the execution, held on the same after the time limited for its return. On the 18th day of February, 1885, the deputy sheriff wrote a return on the execution in these words: “No real or personal property found,” and signed his name thereto, and delivered the same to the officer in charge of the main office to be filed. On the next day, the nineteenth, the sheriff filed the execution in the county clerk’s office with the return thereon indorsed by the deputy.
This action was commenced on the eighteenth day of February, the day on which the deputy sheriff indorsed his return. I think the return was sufficient within the provisions of the Code (sec. 1871), and the rule in equity with respect to the bringing of judgment creditor’s actions. The provisions of the Code, like that of the ¡Revised Statutes, required the return of an execution upon the judgment, wholly or partly unsatisfied, before the bringing of a creditor’s action to reach equitable assets. But these statutory requirements are only an expression of the rule in equity that before the creditor could *213 reach, by action, equitable assets, his remedy at law must be exhausted. The return by the sheriff of an execution unsatisfied is official evidence satisfactory to the court that the creditor has proceeded as far as he could in a court of legal -cognizance to obtain satisfaction of his judgment. It is the duty of the sheriff, having made a return of his doings under an execution, to file the same in the proper office. That is implied in the command to return the same within sixty days. The word return in this last sense had more significance, when an execution proceeded from the court under its seal, for an officer to whom process is delivered for execution must, when executed, return or deliver back the same to the court issuing it, with his return thereon. “ A return to process is the officer’s answer touching the service or execution of such process. It is usually in the form of a certificate, and is indorsed on the writ, process or paper, and it must be signed by the officer making it” ( Crocker on Sheriffs [2d ed.], sec. 39). It is this return which the sheriff makes that the execution is unpaid wholly or in part, and not the mere filing of the process, with which the court deals in determining whether the remedy at law has been exhausted. It is such return which may be amended if erroneous, or upon which, if false, an aggreived party has a remedy. Thus in Cassidy agt. Meacham (3 Paidge, 312), the chancellor said : “ The creditor must set out in his bill the issuing of the execution, the time at which it was returnable, and the actual return of the sheriff thereon, in such a manner that the court can see that the remedy at law has been legally exhausted.”
In Clark agt. Dakin (3 Barh. Ch., 36), when the execution had been filed by the sheriff in the wrong clerk’s office, the chancellor held in substance that the sheriff’s return upon the writ, and not the filing thereof, was the important thing, and he said' “ for the remedy at law is exhausted by the sheriff’s return upon the execution, which is all that is necessary to give the court jurisdiction.”
In the Ocean, National Bank agt. Olcott (46 N. Y., 12, 19), *214 Church, C. J., says: “Although the indorsement of the execution ‘nulla bona ’ was not filed, it was actually made, which, with the other facts alleged, may be regarded as a substantial compliance with the equity rule referred to.” ( Weinbrenner agt. Johnson, 7 Abb. P. R. [N. S.], 202, 207.)
During the life of an execution in the sheriffs hands there is a possibility that it may be collected or paid. But in the case under consideration, when the sheriff made his return thereon, the execution was already spent. The sixty days in which a levy might have been made, upon property subject to levy, had already expired. No levy could have been thereafter made. The judgment debtors had assigned and had parted with all their property, and were insolvent. Under such circumstances, the return made by the deputy sheriff, who was charged with all duty under the process, on the eighteenth of the month, is sufficient to answer all the demands of the statute, or the rule in equity, to uphold the plaintiff’s suit commenced on that day. It would be sacrificing the substance to the form to hold that the failure of the sheriff to file the execution until the following day should defeat the plaintiff’s action commenced on the eighteenth day of February.
The other objection raised by the defendants’ counsel is apparently more difficult. But upon examination it turns out to be a difficulty in appearance only, and not substantial. A creditor with full knowledge of fraud in fact in the execution and delivery of a voluntary assignment by a debtor of his property may elect to waive the fraud, and may acquiesce in and confirm the dispositions made thereby, and may choose to take a benefit thereunder. In such case he could not afterwards, by action in a court of equity, move in hostility to the assignment, and seek to set it aside as fraudulent against creditors. An election clearly and unequivocally made by a creditor of the assignor to sustain the assignment, and to take benefits thereunder, with knowledge on his part that it is impeachable in a court of equity for fraud, is final and *215 conclusive upon the creditor. A creditor, by concurrence with or acquiescence in a voluntary settlement of real or personal estate, which was intended to hinder or' delay creditors, may preclude himself from impeaching the deed (Oliver agt. King, 8 De G., Mac. & C., 110).
In Cavanagh agt. Morrow (67 How. Pr.) I had occasion recently to apply that rule, and I dismissed the creditor’s action upon the ground that he had acquiesced in and confirmed the assignment (See, also, Rapalee agt. Stewart, 27 N. Y. 313; Pratt agt. Adams, 7 Paige, 639, 641). Shortly after the execution and delivery of the assignment the books of the assignors were examined by an expert accountant at the instance of the creditors, who discovered therefrom that shortly before making the assignment, and in contemplation thereof, the assignors, who were copartners in trade, had withdrawn to their own use a considerable part of the moneys of the firm. It was not intended by them that these moneys should pass under the assignment, and they in fact never reached the hands of the assignee. At a meeting of creditors, at which the plaintiffs were present, the fact of the withdrawal of such funds by their debtors to their individual use was reported by the person who examined the books. Notwithstanding the knowledge of such facts so reported to them a proposition for the compromise of the debts of the assignors with their creditors was discussed. In the end an agreement looking to such composition was signed by several creditors, including the plaintiffs’ firm. By this agreement the creditors were to receive forty cents on the dollar of their respective claims and the assigned estate was to be restored to the assignors, and the assignee discharged.
This agreement bears date the 28th December, 1883, about forty days after the assignment was made. The agreement of compromise was never carried into effect. The subsequent action of the plaintiff was in itself enough to defeat it. When they signed the agreement the plaintiffs reserved the right to withdraw unless the arrangement was consummated by a *216 certain day, and before the day named they in substance withdrew. Having received nothing in pursuance of the agreement, they doubtless had the right to recede at any time before it became perfected. They certainly had such right if they had become satisfied that the conduct of the assignors was fraudulent and that the assignment itself was void or voidable for fraud.
On the 12th day of January, 1884, they clearly made an election to treat the assignment as fraudulent, for they then, upon affidavits, caused to be issued out of this court, in an action against their debtors, an attachment under which the sheriff levied upon and seized the assigned estate. Among the grounds alleged in the affidavits for the attachment was the fraudulent withdrawal of moneys by the debtors from their firm assets immediately before their assignment and in' contemplation thereof.
The plaintiffs cannot be charged either with acquiescence or laches in not taking this step in hostility to the assignment immediately upon being advised at the creditors’ meeting of the withdrawal of these funds by their debtors, under the circumstances above mentioned, to be used by them in perfecting a compromise with their creditors or in supporting themselves and families in the event that a compromise could not be effected.
The assignors had been advised by counsel that such withdrawal of funds was not improper, and the plaintiffs may be excused from not at once seeing in the discussion for a compromise that the withdrawal of these funds was part and parcel of a scheme on the part of the assignors to delay and defraud creditors; and in order to constitute a valid confirmation “ a person must be aware that the act he is doing will have the effect of confirming an impeachable transaction ” (Leading Cases in Eq. [ White & Tutor, 4th ed.], vol. 1, pl. 1, p. 237), “ or, in other words, of the way in which the facts would be dealt with in a court of equity ” (Idem, p. 259). After the attachment was levied the assignee claimed the *217 property, "but the plaintiffs gave a bond of indemnity and the sheriff held on to the property. But the entire conduct of the plaintiffs in procuring the attachment upon the grounds alleged, which were submitted to the court, and their subsequent steps thereunder, was a pronounced election to regard the assignment as invalid, and they will be limited to an attitude of hostility hereafter (Rodermund agt. Clark, 46 N. Y., 354; Mollen agt. Tusca, 87 N. Y., 166). The plaintiffs’ right to the attachment, upon the grounds alleged by them, has been sustained by the general term of this court ( Victor agt. Henlein, 34 Hun, 562, 565).
There are two other grounds upon which reliance is placed by the defendants’ counsel to show an adoption by the plaintiffs of the assignment: ■ one is that they moved in the court of common pleas to remove the assignee, the other that they proved their claim and delivered the proof to the assignee, both of which steps were taken after they had sued out their attachment. And if. I am correct in the conclusion that the suing out of the attachment and the seizure thereunder of the assigned estate, upon the grounds alleged, was an election on the plaintiffs’ part to act in hostility to the assignment, any steps in a contrary direction thereafter must fail of success.
But amongst the grounds set up in the court of common pleas upon which the removal of the assignee were sought, were the facts set up in the affidavits upon which the attachment was obtained. And in the court of common pleas the defendants’ counsel distinctly urged, when the removal of the assignee ‘was asked, that the plaintiffs were attaching creditors and could not move in that proceeding. The application to remove the assignee was not granted. Although in one aspect this movement on the plaintiffs’ part might be considered as one for the preservation of the assigned estate in the hands of another assignee, yet as this estate was already “ in custodia legis” under the plaintiffs’ attachment, in hostility to the assignment, that fact of itself would have furnished a sufficient reason for the denial of the application.
*218 The plaintiffs, in August, 1884, proved their debt and filed the same with the assignee. But they annexed to their proof a statement that they did not thereby waive any rights they may have acquired under their attachment, and they added, “ nor do we recognize in any manner the validity of said general assignment unless the same is held to be valid and binding against us.”
In Cavanagh agt. Morrow (supra), there was an unqualified proof by the creditor of its debt and its submission. That, with other facts appearing in the case, was considered to be an act clearly in recognition of the validity of the assignment, and showing an intention to participate in its proceeds. The creditor had taken no steps adversely to the instrument.
But in the case under consideration the proof was submitted with an intentional qualification, and was only to be taken into consideration by the assignee in the event that the assignment should in the end be held to be valid. There was no admission of its validity. The assignee, cognizant of the proceedings taken by the plaintiffs in hostility to the assignment, could doubtless reject the proof and the claim (Mullen agt. Tuska, supra).
In Boerum agt. Schenck (41 N. Y., 181, 190, 191), it appeared that the beneficiaries accepted certain moneys under a sale of premises, and with full knowledgdge of the facts gave a receipt therefor “ on condition that it should not be deemed an affirmance of the sale, nor prejudice their right to set it aside, or their interest in the premises.” The act was insisted upon as an estoppel.
The defendants’ counsel makes substantially the same claim in this case. But in Boerum agt. Schenck, Woodruff, J., said : “ Such a receipt has none of the characteristics of an estoppel. Such a receipt admits nothing ; it misleads no one. It can work no fraud upon any person. No one of the requisites of an enquitable estoppel or estoppel in pais can be founded on it” (Haydock agt. Coope, 53 N. Y., 68).
An equitable estoppel never takes place where one party *219 did not intend to mislead and the other was not misled (Jewett agt. Miller, 10 N. Y., 402). And to create an estoppel, the conduct or representation must have been intended to influence, and must have influenced the other party to his injury (Payne agt. Burnham, 62 N. Y., 69). For while the plaintiffs, in filing conditionally and qualifiedly proof of their debt, did not intend to commit themselves to anything inconsistent with their election and action, adversely to the assignment and the assignees right and claim to the assigned estate, their action in that regard could not and has not affected the assignee or others interested under the assignment to his or their injury. For these reasons, therefore, the motion made by the defendants’ counsel at the close of the case, to dismiss the complaint, must be denied.
Upon the merits the case is completely with the plaintiffs. The assignors, professing to surrender all their property through the assignment, intentionally withheld a considerable part of their estate from its operation. They took it to themselves, to be appropriated to their own use. This was part of a plan which culminated in the assignment itself. It was not intended that these moneys should be inventoried or that the assignee should get them. That the assignee was ignorant of the withholding of these moneys by the assignors does not affect the fraudulent character of the transaction. The action of the assignors was fraudulent and their conduct vitiated the deed in equity (Talcott agt. Hess, 31 Hun, 282 ; Shultz agt. Hoagland, 85 N. Y., 464). The withholding of these moneys by the assignors has been already adjudged to have been fraudulent as to creditors (Victor agt. Henlein, supra). But this fraud is inseparable from the assignment itself. The facts do not justify a conclusion that the assignee took possession of the assigned estate in any true sense.
The assignors and their agents and clerks had the charge and possession, very much as before the execution of the instrument. The assignment was administered largely in the interest of the assignors, instead of the creditors.
*220 The facts appearing in evidence justify what Yah Hoeseh, J., said in the court of common pleas on the motion to remove the assignee: “ He (the assignee) has disregarded that pro-
vision of the statute that requires that an assignment should be accompanied and followed by an absolute change of possession of the property assigned. He not merely employed the assignors, and put them upon the pay-roll, but he left them in undisturbed possession of the goods.”
There must be judgment in favor of the plaintiffs decreeing the assignment to be fraudulent and void, as having been made with intent to hinder, delay and defraud them, and that the same be set aside.