Lockett *v.* Kinzell.

## LOCKETT *v.* KINZELL.

(*Knoxville.* November 3, 1897.)

ESTOPPEL. *To deny validity of general assignment.*

A creditor is not estopped to deny the validity of an assignment for creditors by indicating to the assignee that he will take under the assignment, where neither the assignee, such creditor, nor any other creditor, has changed his attitude toward the trust property in any way in consequence thereof.

Cases cited: O'Bryan Bros. *v.* Glenn Bros., 91 Tenn., 106; Swanson *v.* Tarkington, 7. Heis., 612; August *v.* Seeskind, 6 Cold., 166; 148 N. Y., 227; 13 Wend., 240; 9 Pa. St., 207; 1 Rawle, 163; 48 Pa. St., 380; 27 N. Y., 310.

FROM KNOX.

Appeal from Chancery Court of Knox County. H. B. LINDSAY, Ch.

GREEN & SHIELDS for Lockett.

FOWLER, MYNATT & FOWLER for Kinzell.

BEARD, J. The complainants are creditors of Kinzell & Co., who, in June, 1896, undertook to make a general assignment which was confessedly fraudulent in law, and the bill in this cause sought to impeach this instrument, and by attachment to

appropriate the property covered by it, as far as need be, to the various debts of the complainants. As to all but two of these complainants, the defendants relied upon their conduct as raising an equitable estoppel to prevent a recovery. The facts relied on for this purpose are, briefly, as follows: In October, 1895, the solicitors of all the complainants (except the two against whom this rule is not invoked) addressed a letter to the assignee of the insolvent firm, in which they stated to him that they held for collection a large part of the claims protected by the assignment; that some of their clients had spoken of filing a bill in the Chancery Court to wind up the trust, but that if he (the assignee) was making proper progress, they (the writers) were not inclined to interfere with him. In order that they might be informed with regard to the condition of the matters in his hands as assignee, they requested him to call at their office for an interview. A few days thereafter these gentlemen addressed a second letter to the assignee, in which they reminded him, with some severity, that he had failed to call in answer to their request. Then giving him the names of the creditors represented by them, they said that they were directed to demand an immediate settlement, and, in the event it was not made, to take steps to enforce it. They again asked him to call and let them know what his purpose was. Soon after this letter was sent, the attorney of the assignee called upon these gentlemen and asked them

if he was to consider their debts as filed. To this they replied he might so consider them. Subsequently the assignee, through his attorney, announced to one of these solicitors his readiness to pay the *pro rata* due his clients; but this gentleman declined to accept payment because his partner, who had personal charge of this matter, was then out of the city. At this juncture this Court declared the "General Assignment Act" of 1895, under which the assignment in question was prepared, to be unconstitutional. The effect of this decision was to leave Chapter 121 of the Acts of 1881 as the law regulating general assignments in this State, and, as the instrument in question failed altogether to comply with the essential requirements of that statute, under the settled rule of this Court, it was open to successful attack upon the part of dissatisfied creditors of the grantors, as fraudulent in law. Immediately thereafter the present bill was filed.

The question is, do the foregoing facts work an estoppel on such complainants as were represented in these negotiations by these solicitors to impeach this assignment, though fraudulent in law as to all creditors of the assignors? It will be observed that no benefit accrued to these complainants as the result of these negotiations between their solicitors and the assignee. Nor was the trust estate or the assignee placed at disadvantage by them. If estopped at all, it is upon the bare ground that without any change of attitude upon the part either of complainants or

of other beneficiaries, or of the assignee toward the trust property, and in the absence of affirmative or aggressive steps to enforce rights under the assignment, they indicated in this correspondence and these conversations their purpose to take under the assignment.

That a fraudulent transfer may be ratified by a creditor so as to preclude him from attacking it, is well settled, but we have not had our attention called to any case where this result has followed from facts so meager as these. Where a benefit has been received by the creditor from the fraudulent transfer, or where the assignee, by reason of the assailing creditor's conduct or agreement in recognition of it, has been put at disadvantage, or where such creditor enters into an arrangement with the other creditors of the fraudulent grantor looking to a disposition of the assigned property and distribution of its proceeds among all (Bump on Fr. Conveyances (3d Ed.), Secs. 456, 457), or where he takes legal steps to enforce the assignment, or where he does anything else unequivocal and decisive in character (*O'Bryan Bros.* v. *Glenn Bros.*, 91 Tenn., 106), he would be held to have estopped himself from attack upon it. But, as was said by the Supreme Court of New York, in *Groves* v. *Rice*, 148 N. Y., 227, "in order that a creditor shall be estopped by an act of his from impeaching the validity of an assignment, it must appear that he has accepted an actual benefit under it, or that he has

assumed such an attitude as 'would be inconsistent with his taking such- a position." This rule, thus announced, will be found illustrated in *Howe* v. *Henriquez*, 13 Wend., 240 (S. C., 27 Am. Dec., 204); *Hays* v. *Heidelberg*, 9 Pa. St., 207; *Adlum* v. *Yard*, 1 Rawle, 163 (S. C., 18 Am. Dec., 508); *Ingram* v. *Hartz*, 48 Pa. St., 380; and in *Rappallee* v. *Stewart*, 27 N. Y., 310.

In the first four of these last cited cases the creditor was held estopped because he had obtained benefits from the transfer, afterwards assailed by him; in the last (*Rappallee* v. *Stewart, supra*) the contesting creditor had entered into an agreement with the other creditors, showing an assent to and ratification of the assignment, by which the parties to it consented and agreed that certain other persons, one of them being the assignor debtor, should be joined n the disposition of the property assigned. It is apparent that these cases fall short of being authority for the contention that is made in the present case. Nor is it sustained by *Swanson* v. *Tarkington*, 7 Heis., 612, and *August* v. *Seeskind*, 6 Cold., 166, cited for that purpose. The first of these cases simply held that in claiming under a trust assignment a creditor affirmed it *in toto*, while the second only announced the well-settled rule that in the absence of a reformation of an assignment which, by the inadvertence of the draftsman, contained a clause making it fraudulent in law, creditors claiming under it are held to the terms as written in it, and that

the grantors, as against creditors assailing it, will not be permitted to say it is not, in fact, what they intended it to be. If the contention of the defendants is sound, these complainants, acting in good faith and without inflicting wrong upon the trust estate, or having acquired the least advantage, had, by an inadvertence, tied their own hands, so that they must look on, without power to protect themselves, while more fortunate creditors, upon the discovery that the assignment is fraudulent in law, fix their attachments upon the property and appropriate its proceeds.

On the whole case, we think neither on principle nor on authority ought the complainants to be repelled, and that the Court of Chancery Appeals was in error in holding that they were. So much of the decree of that Court as holds that certain of these complainants were estopped is reversed, and a decree will be entered here in favor of all the complainants.